JOHN S. WRIGHT *vs.* ALEXANDER OAKLEY & another.

By the Rev. Sts. *c.* 90, when a suit is brought against a defendant who has been an inhabitant of the State, but resides out of the State, and is not within its jurisdiction when the writ is served, and no effectual attachment of his property is made, it is necessary, in order to constitute a sufficient service of the writ, that the summons be left at his last and usual place of abode within the State. But *it seems* that if the summons for such defendant is left with his agent or co-defendant, the court may order a new summons or notice to be issued and served, and that after a return of the service of personal notice on him, he is bound to answer to the suit.

The provision in the Rev. Sts. *c.* 120, § 9, that the time of a party's absence and residence out of the State shall not be taken as any part of the time limited for the commencement of an action against him, does not apply to a case in which the action was barred by the statute of limitations that was in force before the re vised statutes went into operation.

THIS action was commenced against William, Alexander and George Oakley, formerly partners in business at Boston, as the drawers of two bills of exchange upon a firm at New York, who accepted, but failed to pay them at maturity. One of the bills became payable in May, and the other in September, 1826, and were purchased by the plaintiff, after they were dishonored.

The writ was dated August 19th 1839, and the officer's return thereon was as is hereinafter stated in the opinion of the court. The action was entered at the succeeding October term of the court of common pleas. An appearance was then entered for Alexander only, and the action was brought into this court by demurrer. At the March term, 1841, notice of the pendency of the action was given to George, by serving on him a copy of a rule of the court, obtained on motion of the plaintiff's attorneys. William Oakley died in England, a few days before the date of the writ.

The trial was had at the last March term. Before the case was opened to the jury, a motion was filed in behalf of George Oakley, that the action should be dismissed, as to him, for want of sufficient service; no appearance having been made for him. It was ruled, by consent, that said George should plead to the action, without prejudice; and the question as to the sufficiency

of the service upon him, was reserved for the consideration of the whole court.

The drawing of the bills by the defendants' firm, the presentment to the acceptors for payment, the protest for non-payment, and notice to the defendants, were proved or admitted. The defendants relied on the statute of limitations.

It was in evidence, that the defendants failed about the time of the maturity of the first bill, and that after both causes of action, on which the plaintiff relied, had accrued, they removed from Boston to New York. There was also evidence, (which it is unnecessary here to state,) as to the subsequent residence of the defendants in this Commonwealth.

The jury were instructed, that although, under the old statute of limitations (*St.* 1786, *c.* 52), the action was barred on one of these bills in May, and on the other in September, 1832, yet the Rev. Sts. *c.* 120, § 9, altered the law in this particular, and enabled the plaintiff to sue and maintain his action, unless the defendants could show a residence of six years, in the whole, in this Commonwealth, since the causes of action accrued, and before action brought : That residence, in this case, meant the same as domicil ; and that in making up the six years, mere temporary and occasional absences out of the State — the domicil remaining — were not to be included in the computation.

The verdict was against both defendants for the amount of both bills.

Verdict to be set aside, or amended, as to both or either of the defendants, or such other disposition to be made of the action, as, in the opinion of the whole court, the law of the case requires.

This case was argued at the last March term.

*Gardiner & English,* for the defendants.

*B. Rand,* for the plaintiff.

SHAW, C. J. The first question in the present case is, whether there has been such a service of process on George Oakley as to warrant the court in taking jurisdiction of the cause as to him. The facts are, that the said George Oakley was not, at the time of the service of the writ, an inhabitant of the

34 *

Commonwealth, or within its jurisdiction ; and the only service made on him was by a mere nominal attachment.   The return of the officer in substance is, that by direction of the attorneys, he attached a chip as the property of the three defendants, and summoned them by giving a summons to Alexander, and at the same time by giving him a summons for William, and another for George.   William, who was the father of the other two, had then deceased, and no question arises as to him.

The general rule certainly is, that to render a party liable to the jurisdiction of a court of the State, so that a valid judgment may be rendered against him, he must be either, 1st, an inhabitant, and have his domicil within the State ; or 2d, he must be personally within its jurisdiction ; or 3d, he must have property within the jurisdiction, liable to be reached, and bound to answer such judgment, by some legal process.

But this is to be taken with some limitations.   By the Rev. Sts. *c.* 90, § 44, it is provided, that "no personal action shall be maintained against any person who is out of the State at the time of the service of the summons, unless he shall have been, before that time, an inhabitant of the State, or unless an effectual attachment is made," &c.   This certainly carries a strong implication, that such an action can be maintained, if the defendant has heretofore been an inhabitant, though not one at the time.   The reasons of this provision are stated by the commissioners for revising the statutes, in their note to the corresponding *section of their report.   Note to c.* 90, § 39. It is there stated, that such a course of proceeding is warranted by ancient usage ; that it may be useful and beneficial for some purposes, as in case the defendant should return within the jurisdiction ; and, under the restrictions with which these proceedings are to be had, and a judgment taken against an absent defendant, will work no injustice.   At the same time, it is admitted that such a judgment would have very little force in any foreign jurisdiction.   It seems therefore to have been the intent of the legislature, Rev. Sts. *c.* 90, § 44, that an action may be maintained against a person out of the State at the time, if he had before that time been an inhabitant of the State, or if

an effectual attachment shall have been made on the original writ. But it is provided by § 45, that if the defendant is out of the State at the time of the service, the summons shall be left at his last and usual place of abode, if there be any within the State. If the defendant has ever been an inhabitant, he must have had a domicil and a place of abode within the State ; and it is only in the other alternative, when there has been an effectual attachment of property, and where the defendant was never an inhabitant of the State, that the summons may be left with a tenant, agent or attorney. It is immaterial, therefore, to consider whether Alexander Oakley, as a partner or otherwise, was the agent of George Oakley, within the meaning of this statute. If the latter was amenable to the laws, it was not in consequence of there having been an effectual attachment of property on the original writ, for it is plain there was none ; but in consequence of his having been formerly an inhabitant ; and therefore he could only be lawfully served with process, by leaving the summons at his last and usual place of abode ; which was not done.

But perhaps this failure to make due service originally is not fatal, and the defect may have been repaired by the subsequent proceedings. By the Rev. Sts. *c.* 90, § 53, it is enacted, that " when the service of the writ, in any civil action, is defective or insufficient, by reason of any mistake on the part of the plaintiff or of the officer, as to the place where, or the person with whom, the summons or copy of the summons ought to have been left, the court may, in their discretion, order a new summons or notice to be issued and served, in such manner as they shall direct ; and the service so made and returned shall be as effectual as if duly made and returned on the original writ." In the present case, it appears that after the action was entered in this court, an order was made in the cause, reciting the facts, and directing notice to be given personally to George Oakley, by a service on him of a copy of the order ; and it appears by the return of an officer of this county, that a copy of the order was personally served on George Oakley.

At first we were inclined to the opinion, that as George Oak-

Wright *v.* Oakley & another.

ley was not an inhabitant of the State at the time of the com
mencement of the action, and as no effectual attachment of
property was made, he was not liable to be summoned original-
ly ; and if so, that the subsequent personal notice was inopera-
tive.   But upon consideration, and a more careful examination
of the statutes, we are strongly inclined to the opinion, that by
a proper process George Oakley was amenable to the laws of
the Commonwealth, as having been formerly an inhabitant there
of ; that this being the case, the irregularity in the service, in
leaving the summons with an agent or attorney, instead of leav-
ing it at the defendant's last and usual place of abode, was a
mere mistake in the mode pointed out by the statute, capable
of being corrected ; that it was so corrected, and that the de-
fendant, George Oakley, was bound to answer to the suit.   It
is unnecessary, however, to give a decisive opinion upon this
point, for reasons which will hereafter appear.

But the question which, on account of its importance, has
seemed entitled to the greatest consideration, is, whether, under
the operation of the revised statutes, the plaintiff has now a
remedy to recover a debt, which was effectually barred by the
former statute of limitations, before the revised statutes went
into operation.   I state the question in this form, because it ap-
pears by the facts, and is not contested, that the two drafts, on
which the action is brought, respectively fell due in May and
September 1826 ; that the two defendants, George Oakley and
Alexander Oakley, resided in Boston at that time, so that the
statute of limitations began to run at the time the causes of
action accrued ; and consequently, by force of *St.* 1786, *c.* 52,
and the construction uniformly put upon it, the action became
barred, on the drafts respectively, in May and September 1832
And under that statute, this result was not changed or affected
by the fact, that after the cause of action had accrued, and
after the statute of limitations had begun to run, one or both of
the defendants went out of the State, and remained out of the
State a longer or shorter time, thereby changing residence or
domicil, or otherwise.   But this action was brought in August
1839, long after the revised statutes went into operation.   By

Rev. Sts. *c.* 120, § 9, it is provided, that, "if, at the time when the cause of action shall accrue against any person, he shall be out of the State, the action may be commenced, within the time limited therefor, after such person shall come into the State ; and if after any cause of action shall have accrued, the person against whom it has accrued shall be absent from and *reside out of* the State, the time of his absence shall not be taken as any part of the time limited for the commencement of the action." From a comparison of this provision with the prior statute, it is manifest, that although the time of limitation of actions on bills of exchange is the same in both, the mode of computing that term of time is different ; the revised statutes exclude from the computation the time during which the defendant was *absent from* and *resided out of* the State ; whilst the old statute made no such exception. The specific question, therefore, is, whether an action, brought after the revised statutes went into operation, can be maintained upon a contract on which an action would have been barred by the old statute, if such action had been brought at any time after 1832, and before the revised statutes took effect.

This is not the question, whether a simple and unqualified repeal of a statute of limitations would revive a cause of action. That would be much more like the case of *Hewitt* v. *Wilcox*, 1 Met. 154, cited in the argument. In that case, it was held, that the law, preventing an unlicensed practitioner of medicine from having the benefit of law for the recovery of his fees, did not affect the contract, but subjected the party to a personal disability to bring suit. The law was not changed ; a contract was implied by law, from the performance of services on request ; but the performance of that contract could not be enforced by legal proceedings. So, if the unlicensed practitioner had taken a promissory note, stating the consideration to be for such medical services by him, or a bond under seal to the like effect, the result must have been the same. The contract was not declared invalid, but the law, whilst it was in force, disabled such practitioner from bringing suit upon it. It followed, as a necessary consequence, that when the disability was removed by

an unqualified repeal of the law, an action on the subsisting con-
tract will be maintained.   So in case of an unqualified repeal of
the statute of limitations.   However unjust it would be to pass
such a repealing law, inasmuch as it may be presumed, after a
statute of limitations has closed so as to form a complete bar to
an action, that parties do not take the same care of their vouch
ers and proofs, and however improbable it may be, that a wise
and just legislature would pass such a law, there would be some
ground for holding, as the statute of limitations never annulled
or affected the contract, but only took away the remedy by ac-
tion or other legal process, that when the statute was repealed,
the remedy might be pursued as if the statute of limitations had
never existed.   But reserving our opinion upon such a case, if
it should arise, we think the revised statutes, and the repealing
act accompanying the same, cannot be construed as a simple and
unqualified repeal of the old statute of limitations, but rather as
a continuance of the provisions of that statute, with some mod-
ifications.

In construing the revised statutes and the connected acts of
amendment and repeal, it is necessary to observe great caution,
to avoid giving an effect to these acts, which was never contem-
plated by the legislature.   In terms, the whole body of the
statute law was repealed ; but these repeals went into operation
simultaneously with the revised statutes, which were substituted
for them, and were intended to replace them, with such modifi-
cations as were intended to be made by that revision.   There
was no moment, in which the repealing act stood in force, with-
out being replaced by the corresponding provisions of the re-
vised statutes.   In practical operation and effect, therefore, they
are rather to be considered as a continuance and modification of
old laws, than as an abrogation of those old, and the reënact-
ment of new ones.   In order to construe them correctly, we
must take the whole of the revised statutes, together with the
act of amendment and the repealing act, and consider them in
reference to the known purposes which the legislature had in
view in making the revision.

The object, we think it manifest, was, not to any considerable

extent to change the law, but to remove doubts, to reconcile discrepancies and contradictory enactments, to give the sanction of positive law to rules which before stood on the authority of usage, reasonable deduction and judicial decision, and to render all the enactments of the statute law more clear, concise and practical. But we think it was not intended to alter to any considerable extent the rules of law affecting the rights of parties , and wherever there was such a purpose manifested, it was intended that the new rules should operate prospectively, and not affect past transactions. Wherever the change in the law was most considerable — as the rules affecting real property — there was a provision postponing the operation of the new rules to a future day. It is, therefore, we think, more consonant with the manifest intent of the legislature, as well as more consistent with principles of justice, in construing any particular provision of the revised statutes, which varies, in any respect, from the corresponding provision of the old law for which it was substituted, to give it a prospective operation, and not to give such a construction, unless necessary, as to disturb existing relations, or unsettle existing rights, duties and liabilities.

We are then brought to the question, whether the repeal of the statute of limitations of 1786, *c.* 52, with the simultaneous enactment of the Rev. Sts. *c.* 120, was intended to remove the bar to an action, which had already become complete and absolute under the former statute, and to authorize an action to be maintained when there had not been the lapse of a term of six years, computed according to the mode prescribed in the latter ; and we are of opinion that it was not.

It is to be recollected, that although the revised statutes were adopted in the autumn of 1835, their operation was suspended until the first day of the ensuing May, and that, in the mean time, the act of amendment was passed, and the act specifically repealing the prior acts, in terms, so that all went into operation together, and all of them are to be construed together, to ascertain the intent of the legislature.

The Rev. Sts. *c.* 146, § 3, provide, in general terms, for the repeal of all acts and parts of acts, therein revised, which

are repugnant, &c., with the exceptions and limitations therein expressed. Sect. 5 provides, that the repeal of the acts therein mentioned " shall not affect any act done, or any right accruing or accrued, or established, or any suit or proceeding had or commenced in any civil case before the time when such repeal shall take effect ; but the proceedings in every such case shall be conformed, when necessary, to the provisions of the revised statutes."

The first remark which presents itself upon this provision is, that it shows an anxious desire, on the part of the legislature, that the revised statutes should take up the existing rights and relations of parties, as fixed and regulated by law, and that their operation upon all rights and relations should be future and prospective. And yet so far as statutory amendments, in the course of legal proceedings, were supposed to have been effected by those statutes, it was intended that they should have an immediate operation. But the great difficulty is, in discriminating between that which may affect the rights of a party, and that which merely regulates the course of proceeding ; because the establishment of a right may often depend upon that course of proceeding. Suppose, for instance, that an action was pending in April 1836, and came on for trial in May following — the revised statutes having in the mean time taken effect. In many cases, these statutes modify the rules of evidence, by rendering witnesses competent, who were incompetent before, or the reverse. This is a mere regulation of the proceeding, and is subsequent to the time when the revised statutes took effect, and is therefore regulated by them. But by thus changing the mode of proof, by a change of the rules of evidence, the plaintiff may fail of proving his case, or the defendant be deprived of the grounds of his defence. The case of *Bickford* v. *Boston & Lowell Rail Road*, 21 Pick. 109, was one where the revised statutes authorized a trustee, on *scire facias*, to make a new answer, which he could not do before. It was held, that it was a mere regulation of the proceeding, not affecting an act done or right fixed, and was therefore allowable, although it may be that the recovery of the plaintiff depended upon it. See also

*Burnside* v. *Newton*, 1 Met. 426.   It is obvious therefore that these two provisions, the one, that the revised statutes shall not affect an act done or right accrued, and the other, that legal proceedings shall be conformed to them when necessary, are to some extent conflicting with each other, and in some instances cannot both be obeyed.   It becomes therefore necessary, in such cases, for courts to decide, according to the true intent and purpose of the legislature, which rule shall be applied to the particular case ; and this must often depend much more upon a just and discriminating view of the objects of the law, than upon a literal application of its terms.   In the case of *Sawyer* v. *Bancroft*, 21 Pick. 210, which was very well argued by the late Mr. Locke of Lowell — to whose memory, as an able and promising advocate, and a most upright and honorable man, I take pleasure in bearing witness — it was held that the costs of an appeal were regulated by the law as it stood before the revised statutes, although the trial and appeal took place in the court of common pleas after the revised statutes took effect, and although, literally, a trial and appeal are but legal proceedings ;  because, as the court said, that rule would best carry into effect the intent of the legislature.   The case of *Gay* v. *Richardson*, 18 Pick. 417, is to the like effect.   There it was held, that the revised statutes, giving costs to the party prevailing on a writ of error, did not apply to a judgment reversed after they went into operation, on a writ of error brought before.

The difficulty of applying this repealing clause of the revised statutes to the statute of limitations arises from the maxim, that the statute of limitations affects the remedy only, and therefore it is inferred, that it does not affect the right, inasmuch as rights and remedies are often, and in many cases very justly, spoken of as contradistinguished from each other.   But this is far from being always a just conclusion.   It would be more accurate to say, that the statute of limitations bars the remedy, but does not extinguish the cause of action.   But in truth, the statute of limitations, though only barring the remedy, does thereby deeply affect the rights of parties.   It is eminently a statute of peace.   It is founded on the fact, established by experience,

that after a certain lapse of time, loss of proof may be presumed from the death of witnesses, their dispersion or loss of memory, and the loss of vouchers, so that rights cannot safely and satisfactorily be investigated and adjusted ; and therefore suits shall not be maintained. The justice of the general principle is founded in reason and experience, though for obvious reasons of practical expediency, the precise time of limitation must be fixed by positive law. In many respects, the rights of parties do depend upon the statute. After such a bar is fixed, parties feel justified in forbearing to take and preserve evidence, and to retain proofs and vouchers, as they otherwise would ; and they feel, and act upon the conviction, that such causes of action are at an end. And although it cannot be said in technical strictness, that a man has a vested right to plead the statute of limitations, so that it could not be taken away by an express act of the legislature ; yet here we are inquiring what the legislature intended by the use of language, not repealing or professing to repeal the statute, but modifying and continuing it, with a general saving of all rights accruing or accrued, and not affecting any act done ; and we are of opinion, that the legislature did not intend to take away the right, power or privilege of being protected, for the future, against actions then actually barred by the preëxisting law.

And we think this conclusion is somewhat strengthened by the special repealing act of February 1836, repealing, among others, the old statute of limitations, *St.* 1786, *c.* 52. Sect. 3 provides, that the repeal of the acts and parts of acts shall take effect from and after the last day of April then next, but with all the exceptions and limitations in that behalf expressed in the Rev. Sts. *c.* 146. Sect. 4 provides, that in any case when a limitation or period of time prescribed in any of the said repealed acts, for the acquiring of any right or the barring of any remedy, or for any other purpose, shall have begun to run, and the same or any similar limitation is prescribed in the revised statutes, the time of limitation shall continue to run, and shall have the like effect, as if the whole period had begun and ended under the operation of the revised statutes.

If the statute manifestly intended to give effect to a term of limitation, which had partly run under the old statute, *a fortiori,* we think, it must have been intended to have its full effect upon a term which had commenced and been completed under the old statute.

This decision, we think, will not necessarily extend to the case, where part of the period prescribed had run before the revised statutes took effect, and part afterwards, and where the question is, whether that, which had elapsed before the revised statutes, is to be computed without the exceptions of absence from the Commonwealth, under the old statute, or whether it is to be computed with those exceptions, according to the rule prescribed by the revised statutes. This is a different question, on which we give no opinion. This decision is confined to the case where the bar was perfect when the revised statutes went into operation. And we are not aware that this decision is inconsistent with any adjudged case heretofore determined.

The case of *Battles* v. *Fobes,* 18 Pick. 532, and 19 Pick. 578, confirms this decision, as far as it goes. In that case, it appears that the action was commenced and the plea pleaded, before the revised statutes took effect ; in which respect it differed from the present. It was held, that the bar arising from the statute of limitations, which was good when the action was brought and the plea in bar made, was not taken away by a statute which afterwards came into operation before the trial. That opinion was decisive of that case, and rendered it unnecessary to consider whether, if the action had been brought after the revised statutes took effect, and there was a good bar by the rule of computation under the old statute, it would have been taken away because not barred by the rule of computation in the revised statutes — which is the precise question in the present case. Upon that question, now presented, the court are of opinion, that where an action had been barred by the operation of the statute of limitations, before the revised statutes passed, it was not intended that that bar should be taken away by the qualified repeal of that statute ; that that statute is a good bar to the present action ; and therefore that the verdict, taken for the plaintiff, must be set aside and a nonsuit entered.