[No. 38996.    En Banc.    June 15, 1967.]

THE STATE OF WASHINGTON, *on the Relation of Robert H. Duvall et al., Respondents,* v. THE CITY COUNCIL OF THE CITY OF SEATTLE *et al., Appellants.*\*

*A. L. Newbould, G. Grant Wilcox,* and *Jorgen G. Bader,* for appellants.

\*Reported in 429 P.2d 235.

*Schweppe, Reiter, Doolittle & Krug* and *Robert R. Beezer,* for respondents.

*The Attorney General* and *Fred L. Harlocker, Assistant,* amici curiae.

HILL, J.—The city of Seattle is endeavoring to establish and construct a nonaccess traffic facility known as the R. H. Thomson Expressway. The city council, after extensive hearings, made findings supporting the adoption of what is referred to in the record as "Route B."

Certain property owners whose homes will be condemned if the expressway is constructed on Route B, urged the city to adopt an alternate route (Modified Route S) on an elevated structure through the University of Washington Arboretum (a portion of Washington Park leased by the city of Seattle to the University of Washington for arboretum purposes). (For prior history of this litigation see *State ex rel. Duvall v. City Council of Seattle,* 64 Wn.2d 598, 392 P.2d 1003 (1964).)

Being aggrieved by the adoption of Route B, the property owners availed themselves of the right of review given them by Laws of 1965, Ex. Ses., ch. 75, § 6 (RCW 47.52.195). They filed a petition for a writ of review in the Superior Court for King County, averring that the city council had erred in four particulars:

1. The ordinance adopting Route B, and 7 of the findings made in support of that route are unsupported by material and substantial evidence and are arbitrary and capricious.

2. In computing the cost of the respective routes, the city council used the "substitution theory of valuation" to appraise the arboretum lands which would be affected by Modified Route S.

3. Selection of Route B over Modified Route S was arbitrary and capricious.

4. The notice of the May 27, 1965, hearing was inadequate.

The writ of review issued, and the city filed its answer to these claims of error; and the case was set to be tried on April 27, 1966.

The aggrieved property owners, however, moved for a summary judgment, contending that the statutes under which the city had been acting had been repealed without a savings clause as to pending proceedings, and that all pending proceedings terminated as of August 6, 1965, on which date Laws of 1965, Ex. Ses., ch. 75, the claimed "repealing statute" became effective. The trial court granted the motion on what we conceive to be a somewhat different basis, and remanded the cause to the Seattle City Council for such further proceedings as it deemed proper.

The city of Seattle has appealed. The aggrieved property owners will hereinafter be referred to as the respondents.

The summary judgment must be set aside and the cause remanded for a consideration of the claims of error raised by the respondents in their application for a writ of review.

We do not reach the merits on many of the issues argued to us for they have never been passed upon at the superior court level. Although the trial judge refused to enter the findings and conclusions offered by the city, and the city has appealed from that refusal, it is clear that they were never considered on their merits. The summary judgment would seem to have been granted solely on the assumption that the city of Seattle had proceeded subsequent to August 6, 1965, pursuant to certain statutes which had been repealed,[1] and the trial court reached the conclusion that all such actions were therefore null and void.

■ The city contends that subsequent to August 6, 1965, it proceeded literally and completely in accordance with the statutes which became effective on that date. If it did, the assumption upon which the trial court made its determination, *i.e.*, that the city was proceeding pursuant to

---

[1]The summary judgment stated the question for decision to be "whether Chapter 75, Laws of 1965, Ex.Sess., *makes null and void all proceedings subsequent to August 6, 1965*." It then answers the question by declaring "that all proceedings before the City Council after August 6, 1965 pursuant to the repealed statutes are null and void." It further states that summary judgment is granted and that the cause. be "remanded to the City Council for such further proceedings as the said Council deems proper." (Italics ours.)

repealed statutes, was wrong. In any event, an issue of fact as to whether the city had, as it claims, proceeded under the statutes which became effective on August 6, 1965,[2] could not be determined by a summary judgment.

If it was the intention of the trial court to say— in line with the stated contention of the respondents—that everything the city of Seattle had theretofore done towards the establishment of a nonaccess facility, under the statutes in effect prior to August 6, 1965, could not be the basis for any subsequent action under the changed statute, we are also in complete disagreement with the conclusion reached.

Chapter 75 of the Laws of 1965, Ex. Ses., was enacted primarily for the purpose of clarifying procedures when the Washington State Highway Commission was planning a limited access facility through incorporated cities or towns. It changed only in minor details the procedures applicable to cities planning and establishing a limited access facility.

█ Chapter 75, Laws of 1965, Ex. Ses., consisted of 7 sections; each of the first 6 was designated as a new section to RCW chapter 47.52 (Limited Access Facilities); each was obviously a revision of an existing section; and section 7 repealed each of the 6 sections as they existed prior to the revision. It was, in effect, not a repeal but an amendment of 6 sections of the 32 contained in chapter 47.52 relating to the establishment of limited access facilities.

The leading case on this phase of statutory construction is *Wright v. Oakley*, 46 Mass. (5 Met.) 400 (1843), wherein the court said:

> In construing the revised statutes and the connected acts of amendment and repeal, it is necessary to observe great caution, to avoid giving an effect to these acts, which was never contemplated by the legislature. In

---

[2]The fact that the city council might have complied with the provisions of the original sections of the statute out of a spirit of caution would make no difference *if it actually complied with the provisions of the effective statute*. The compliance with the effective statute is all that is required, and the further compliance with a former statute would be merely surplusage. As a matter of fact, the city says that it did comply with both the old and the new statutes.

terms, the whole body of the statute law was repealed; but these repeals went into operation simultaneously with the revised statutes, which were substituted for them, and were intended to replace them, with such modifications as were intended to be made by that revision. There was no moment, in which the repealing act stood in force, without being replaced by the corresponding provisions of the revised statutes. In practical operation and effect, therefore, they are rather to be considered as a continuance and modification of old laws, than as an abrogation of those old, and the reenactment of new ones. In order to construe them correctly, we must take the whole of the revised statutes, together with the act of amendment and the repealing act, and consider them in reference to the known purposes which the legislature had in view in making the revision. (p. 406)

Our own case of *Howlett v. Cheetham,* 17 Wash. 626, 50 Pac. 522 (1897), is cited by the Supreme Court of California (*In re Martin's Estate,* 153 Cal. 225, 94 Pac. 1053 (1909)) as supporting the proposition stated by the Supreme Court of the United States in *Bear Lake & River Water Works & Irrigation Co. v. Garland,* 164 U.S. 1, 11 (1896):

Although there is a formal repeal of the old by the new statute, still there never has been a moment of time since the passage of the act of 1888 when these similar provisions have not been in force. Notwithstanding, therefore, this formal repeal, it is, as we think, entirely correct to say that the new act should be construed as a continuation of the old with the modification contained in the new act.

In the comparatively recent case of *State ex rel. Cities Service Oil Co. v. Board of Appeals,* 21 Wis.2d 516, 527, 124 N.W.2d 809 (1963), the Wisconsin court had under consideration the effect of the 1941 amendments to a "City planning" act. The court said:

While extensive changes were wrought as a result of the enactment of ch. 203, Laws of 1941, none of them were so incompatible with sec. 62.23, Stats. 1939, so as to terminate the operation of Milwaukee's adopting ordinance of October 15, 1923. *The effect is the same as if these changes had been made by simple amendment*

*without repeal. We deem it immaterial that the device of repeal, with simultaneous creation of compatible new provisions, was used to accomplish the amending process.* (Italics ours.)

Many earlier cases to the same effect can be found in a 1961 A.L.R. Annotation (77 A.L.R.2d 336).

We are satisfied that the legislative intent (by Laws of 1965, Ex. Ses., ch. 75) was to amend and not to repeal the 6 sections which were revised.

Further, it is certain that the right and the power of the city to establish limited access facilities were in no way dependent upon these sections. RCW 47.52.050[3] (not affected by Laws of 1965, Ex. Ses., ch. 75) specifically grants to cities the authority to acquire property in order to establish such facilities.[4]

The excellent analysis in appendix "C" of the respondents' brief of the changes made in the 6 rewritten sections, makes it very clear that insofar as the act relates to the establishment of limited access facilities by cities, the changes were minor in character and intended to govern

---

[3]"Acquisition of property for facility. For the purpose of this chapter the highway authorities of the state, counties and incorporated cities and towns, respectively, or in cooperation one with the other, may acquire private or public property and property rights for limited access facilities and service roads, including rights of access, air, view and light, by gift, devise, purchase, or condemnation, in the same manner as such authorities are now or hereafter may be authorized by law to acquire property or property rights in connection with highways and streets within their respective jurisdictions. All property rights acquired under the provisions of this chapter shall be in fee simple. In the acquisition of property or property rights for any limited access facility or portion thereof, or for any service road in connection therewith, the state, county, incorporated city and town authority may, in its discretion, acquire an entire lot, block or tract of land, if by so doing the interest of the public will be best served, even though said entire lot, block or tract is not immediately needed for the limited access facility." (RCW 47.52.050)

[4]The city urges that this section merely confirms the existence of the right already conferred by RCW 35.22.280(7) and (8) and Article IV, § 14, of the Seattle City Charter. With this contention we do not deal; in any event, RCW 47.52.050 can be accepted as a sufficient basis for the right.

468

procedural steps taken subsequent to the effective date of the 1965 enactment.

There is some contention that the changes made were more than procedural and that there was a change in the standards to be applied in the establishment of nonaccess facilities, *i.e.*, from being required "by the public convenience and necessity,"[5] to being "in the public interest."[6]

Respondents made no showing as to the distinction thought to exist, and we see none. The city council made findings that Route B, as adopted, is "required by the public convenience and necessity"; and that, insofar as we are concerned, is equivalent to a declaration that it is in the public interest.

█  We are satisfied that there was no intent or purpose *to nullify proceedings already taken under the then exist-ing statutes.* The hearings provided for in RCW 47.52.072 (now revised as RCW 47.52.133) and RCW 47.52.073 (now revised as RCW 47.52.135), which had been held in May and June, 1965,[7] accomplished the purpose for which they were intended. There is no reason why these hearings should again be held unless there is substantial merit in the fourth ground of the respondents' petition for a review by the superior court, *i.e.*, " (4) The notice of the May 27, 1965 hearing was inadequate." This will be one of the issues pending before the superior court when this cause is remanded.

To summarize the city's position: It is that the hearings on the determination of the route of *its nonaccess facility*

---

[5]From RCW 47.52.073 and RCW 47.52.074, the pre-August 6, 1965 statutes.

[6]From RCW 47.52.135 the August 6, 1965, and post-statute, the counterpart of RCW 47.52.073.

[7]The Seattle City Council had, pursuant to the then existing statutes, held public hearings on May 27, 28, and June 18, 1965, to determine the route of a nonaccess facility, *i.e.*, the R. H. Thomson Expressway. The respondents appeared, as did many other interested parties. There are 665 pages in the transcript of these hearings. While this transcript was being prepared, and before the city council had an opportunity to make its findings based on the evidence taken at these hearings, Laws of 1965, Ex. Ses., ch. 75 became effective—August 6, 1965.

were held pursuant to the statutes governing such hearings at the time they were held. That all post-hearing procedures subsequent to August 6, 1965, were pursuant to Laws of 1965, Ex. Ses., ch. 75 § 4 (now RCW 47.52.137), which became effective on that date.

We hold that if the city complied with the law effective at the time any particular act was done (before or after the effective date of Laws of 1965, Ex. Ses., ch. 75), the validity of the city's proceedings was not affected. This holding is predicated upon the particular legislative technique used in making the change, which constitutes, in effect, an amendment—not a repeal—of the pre-existing statute.

The error of the trial court in entering its summary judgment has already been explained. The summary judgment is set aside and the cause remanded to the King County Superior Court with instructions to proceed to a consideration on the merits of the issues raised in the respondents' writ of review to "be considered and determined by said court" upon the record of the city council "in the manner, under the conditions and subject to the limitations" prescribed by Laws of 1965, Ex. Ses., ch. 75, § 6, now RCW 47.52.195.

The appellant city of Seattle will recover its costs on this appeal.

FINLEY, C. J., DONWORTH, WEAVER, HUNTER, HAMILTON, and HALE, JJ., and STAFFORD, J. Pro Tem., concur.

---

September 19, 1967. Petition for rehearing denied.