[No. 7265–0–I.   Division One.   December 24, 1979.]

*In the Matter of the Welfare of* IAN GARTH
FREDERIKSEN, ET AL, BETTY JEAN LEE,
*Appellant.*

*E. W. Rexford Lawrence,* for appellant.

*Slade Gorton, Attorney General,* and *Larry Watters, Assistant,* for respondent.

TURNER, J.*—This is an appeal by a mother from two orders of the juvenile court: (1) one order adjudges that her infant daughter, Susanna Lee, age 6 months, is a "dependent child," and places her legal custody in the State Department of Social and Health Services to arrange proper foster care; (2) the other order permanently deprives appellant of all parental rights in her two older children, Ian Frederiksen, age 4, and Bethany Lee, age 2.

Appellant was married to George Frederiksen from 1973 to 1976, when they were divorced. Ian Frederiksen was born to that marriage. The father, George, had relinquished all parental rights to his son and is not a party to this appeal.

Appellant married Mark Lee in 1977. Bethany and Susanna Lee are children of that marriage. Although the father, Mark, appeared in these cases at the trial court level, he did not join in the appeal.

On March 10, 1977, Donald E. Bennett, on behalf of the Department of Social and Health Services, filed identical petitions in juvenile court alleging that Ian Frederiksen and Bethany Lee were each dependent as defined by RCW 13.04.010(2) in that they had no parents or guardian willing or capable of exercising proper parental control; that on March 9, 1977, the children were left unattended and were placed in receiving care by the Seattle Police Department; that the mother and Mark Lee both had extreme emotional problems but refused psychiatric treatment; that both children were in danger of suffering psychological damage if

---

*Judge Theodore S. Turner is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

they remained with the mother unless she received treatment. Petitioner requested the protection of the court for the children.

On March 31, 1978, Riva Zeff, on behalf of the Department of Social and Health Services, filed petitions alleging both children were dependent under RCW 13.04.010; that both Mark and Betty Lee suffered from emotional problems and were incapable of exercising proper parental care; that both children had suffered severe social–emotional deprivation; and that the best interests of the children required that their parents be deprived of all parental rights pursuant to RCW 13.04.100 and RCW 13.04.140.

On June 22, 1978, appellant gave birth to Susanna Lee at University Hospital in Seattle. The Department of Social and Health Services took the baby at birth and placed her in foster care so that appellant never had her actual custody.

On July 26, 1978, Riva Zeff, acting for the department, filed in juvenile court a petition alleging that Susanna was dependent as defined by RCW 13.34.030(2) in that the child has been "abused or neglected as defined in chapter 26.44 RCW;" that there was no proper dwelling for the child to reside in; that there was a deprivation petition pending against the parents because of their failure to provide adequate care and supervision for their other two children who were subjected to social–emotional deprivation; that the parents failed to utilize the services offered by the department and failed to realize the serious danger to the children resulting from their acts and omissions; that both parents had been diagnosed as schizophrenics; and the child Susanna faced a clear and present danger unless action was taken to withdraw her from the parents. The prayer asked the protection of the court.

On August 8, 9, and 10, 1978, a fact finding hearing was held on the petitions involving all three children. The court found that on March 9, 1977, Ian and Bethany were left unattended and through the response of police, the children were placed in a receiving home; that on April 14, 1977, the

parents admitted the dependency of Ian and Bethany, wardship over them was established, and the children were subsequently returned to their parents; that on January 20, 1978, Bethany was temporarily abandoned on a garbage cannister at Seattle Community College and the children were again placed in receiving care. With reference to Ian and Bethany, the court further found:

On January 20, 1978, Bethany was temporarily abandoned on a garbage cannister at Seattle Community College. Police responded and again both Ian and Bethany were placed in receiving care.

Finding of fact No. 7.

Staff members of the Department of Social and Health Services discovered the children's physical needs were not being met; they were not given proper and adequate food, shelter or clothing. One dwelling that the family lived in was dirty, had no heat in the winter and had a broken window in the living room with a blanket over it. There were cockroaches in the house and it was dark inside.

Finding of fact No. 8.

As of August 8, 1978, Mark and Betty Lee were living in a hotel on Second Avenue in Seattle where there was only one main room for them, a communal kitchen and a communal bathroom. The character of the hotel was such that it had a large number of transient residents.

Finding of fact No. 10.

Through arrangements made by the Department of Social and Health Services Homemaker Services, parenting classes and counseling were set up for Mark and Betty Lee. They participated in these services but made almost no progress at all. Betty Lee did not see any need for the services and Mark Lee was either unwilling or unable to profit from them. Betty Lee unreasonably discounted her problems.

Finding of fact No. 11.

Mark Lee suffers from serious emotional and mental problems. He has been hospitalized on several occasions, including in 1976 and in February, 1977. He has been

diagnosed by a psychiatrist as a chronic undifferentiated schizophrenic.

Finding of fact No. 12.

Betty Lee suffers from serious emotional and mental problems. She has been hospitalized in the past, including an involuntary commitment at Western State Hospital in 1971. She has been diagnosed by a psychiatrist as schizophrenic.

Finding of fact No. 13.

The mental condition of the parents deprives them of the judgment and insight necessary to meet the needs of their children. Betty Lee does not understand the requirements of children and Mark Lee has manifested a strong inability to function as an adequate parent.

Finding of fact No. 14.

The emotional needs of Bethany and Ian have not been met. Bethany and Ian exhibited signs of serious emotional and social deprivation as a result of this.

Finding of fact No. 15.

Bethany and Ian, by reason of the parents' neglect, are in need of proper parental care.

Finding of fact No. 16.

Bethany Lee and Ian Frederiksen had been removed from the custody of their parents, Betty and Mark Lee, for a period of at least six months pursuant to a dependency order entered April 14, 1977, prior to this action.

Supplemental finding of fact No. 1.

The conditions which led to their removal still persist.

Supplemental finding of fact No. 2.

There is little likelihood that those conditions will be remedied so that the children can be returned to their parents in the near future.

Supplemental finding of fact No. 3.

Continuation of the parent–child relationship clearly diminishes the children's prospects for early integration into a stable and permanent home.

Supplemental finding of fact No. 4.

Necessary services have been provided or offered to Mark and Betty Lee to facilitate a reunion of the family. Mark and Betty Lee have substantially failed to accept such services.

Supplemental finding of fact No. 5.

With reference to Susanna the court found:

Susanna Lee is in need of proper parental care.

Finding of fact No. 17.

Susanna Lee, although she was removed from the parents at birth, is in danger of negligent treatment or maltreatment because of either the parents' inability or unwillingness to provide the care she needs.

Finding of fact No. 18.

The past patterns of Mark and Betty Lee render it highly probable that Susanna Lee will not receive the care she needs.

Finding of fact No. 19.

The court concluded that the best interests of the children required that the parental rights of Mark and Betty Lee with respect to Bethany and Ian be completely and permanently terminated in accordance with RCW 13.34.190 and RCW 13.34.200, and that Susanna have the right to conditions of minimal nurture and safety as provided in RCW 26.44.010.

Accordingly, the court entered its order of permanent deprivation, terminating the parental rights of the Lees in Ian and Bethany and committing their permanent legal custody to the State Department of Social and Health Services for adoptive placement.

With respect to Susanna, the court entered an order of dependency which continued legal custody in the department for arranging proper foster care. This order also laid out an elaborate, detailed program to be followed by the Lees which included counseling, weekly visitation with Susanna under department supervision, utilizing the homemaker services of the department, attending and successfully completing the child development and parenting

classes at Seattle Community College, a follow–up psychiatric evaluation, and a review hearing in 6 months. The order also contained a warning that if the parents failed to comply with the plan set forth in the order, a petition for permanent termination of the parent–child relationship might be filed after 6 months pursuant to RCW 13.34.180.

The findings of fact entered by the court are not challenged on this appeal. Only points of law are raised as grounds for reversal.

Appellant's first point is that the amended petition alleging the dependency of Susanna was rested on a single ground, *viz.*, that she had been "abused or neglected as defined in chapter 26.44 RCW." Appellant argues that the statutory definition of "child abuse or neglect" clearly implies that actual physical control of the child is necessary to make either word applicable, and that since Susanna was taken from appellant at birth and thereafter continuously kept in foster care, it was impossible for either appellant or her husband to be guilty of abuse or neglect of Susanna. For this reason, appellant contends that the petition should be dismissed as a matter of law.

■ Appellant's major premise is wrong. As appears from the factual summary above set forth, the petition of July 26, 1978, alleged not only abuse and neglect of Susanna as defined in RCW 26.44 but also abuse and neglect of the two older children, the damage resulting to them from it, and the clear and present danger to Susanna unless she was removed from her parents' custody.

The pertinent statutes provided:

RCW 13.34.030 Definitions—"Child", "juvenile", "dependent child". For purposes of this chapter:

. . .

(2) "Dependent child" shall mean any child:

. . .

(b) Who is abused or neglected as defined in chapter 26.44 RCW; . . .

RCW 26.44.020 Definitions. For the purpose of and as used in this chapter:

(12) "Child abuse or neglect" shall mean the injury, sexual abuse, or negligent treatment or maltreatment of a child by a person who is legally responsible for the child's welfare under circumstances which indicate that the child's health, welfare and safety is harmed thereby. An abused child is a child who has been subjected to child abuse or neglect as defined herein. "Negligent treatment or maltreatment" shall mean an act or omission which evinces a serious disregard of consequences of such magnitude as to constitute a clear and present danger to the child's health, welfare and safety: . . .

Under this statutory definition, the child of a mother who is suffering from a mental illness, who does not understand the requirements of children and who is incapable of giving that child proper parental care and supplying its basic needs, is a dependent child. There is no need to wait until such a mother commits physical abuse or neglect and actually damages the child's development by failure to meet its physical, mental and emotional requirements if danger of such a result is clear and present. The facts alleged in the petition and found by the court show that at the moment of birth Susanna was in the legal custody of a mother who is incapable of understanding and meeting the needs of children, who had already damaged her two older children by neglect and failure to meet their physical, mental and emotional needs. That mother had received instruction about how to give proper and adequate child care, but because of her mental and emotional condition she did not have the capacity to learn how to be an adequate parent nor to understand the consequences of the lack of adequate parental care. When Susanna was born to such a mother she faced a clear and present danger of suffering the same damage to her health and welfare as had already been suffered by her brother and sister, if she were left in the custody of her parents.

Nothing in the statute suggests that the Department of Social and Health Services must stay its hand until actual damage to the endangered child has resulted. Indeed, the

expressed intent of the legislature is directly to the contrary. RCW 26.44.010 provides:

The Washington state legislature finds and declares: The bond between a child and his or her parent, custodian, or guardian is of paramount importance, and any intervention into the life of a child is also an intervention into the life of the parent, custodian, or guardian; however, instances of nonaccidental injury, neglect, death, sexual abuse and cruelty to children by their parents, custodians or guardians have occurred, and in the instance where a child is deprived of his or her right to conditions of minimal nurture, health, and safety, the state is justified in emergency intervention based upon verified information; and therefore the Washington state legislature hereby provides for the reporting of such cases to the appropriate public authorities. It is the intent of the legislature that, as a result of such reports, protective services shall be made available in an effort to prevent further abuses, and to safeguard the general welfare of such children:

Under the facts in this case, the danger of serious damage being clear and present, the department performed its statutory duty of intervening to protect Susanna's right to conditions of minimal nurture, health and safety. There was no need to allow appellant's custody to continue until actual damage to the child had occurred. The court's order of dependency was correct and should be affirmed.

Appellant's second point is that the petitions praying that the parents of Ian Frederiksen and Bethany Lee be permanently deprived of all parental rights were filed in March 1978 under RCW 13.04; that this statute was repealed by chapter 291, section 81 of the first extraordinary session of 1977, effective July 1, 1978, without any saving clause as to pending proceedings or a successor statute; that the repeal terminated all rights under the former statute as of July 1, 1978; and that in August 1978, when the fact finding hearing was held, the court was without jurisdiction to consider the petitions. Appellant concludes that the findings, conclusions and orders based on that

hearing should be vacated. She cites *Lau v. Nelson,* 89 Wn.2d 772, 575 P.2d 719 (1978), in support of her position.

■ That case involved the question whether the statute which repealed the host–guest statute applied retroactively to a collision occurring before its effective date. The court held that it did, saying with reference to repealing statutes:

> As a general rule, such statutes terminate all rights dependent upon the repealed statute and all proceedings based upon it.

*Lau v. Nelson, supra* at 774. The legislative intent there was to abolish the host–guest statute and to enact nothing in its place. That situation was entirely different from one like the present where a statute is nominally repealed but is in substance reenacted with or without amendments and additions. The rule in such cases is well stated in 73 Am. Jur. 2d *Statutes* § 391, at 509 (1974), as follows:

> Where a statute is repealed by a new statute which relates to the same subject matter, and which re–enacts substantially the provisions of the earlier statute, and the repeal and re–enactment occur simultaneously, the provisions of the original statute which are re–enacted in the new statute are not interrupted in their operation by the so–called repeal; they are regarded as having been continuously in force from the date they were originally enacted. Thus, it is said that the simultaneous repeal and re–enactment of substantially the same statutory provision is to be construed, not as a true repeal, but as an affirmation and continuation of the original provision. All rights and interests arising under the original statute are therefore preserved; by the same token, liabilities which have arisen under a statute are not affected by its repeal and re–enactment. Where a statute has been repealed and substantially re–enacted by a statute which contains additions to or changes in the original statute, it follows that while the re–enacted provisions are deemed to have been in operation continuously from the original enactment, the additions or changes are treated as amendments effective from the time the new statute goes into effect.

(Footnotes omitted.)

Our Supreme Court applied this rule in a comparable situation in *State ex rel. Duvall v. City Council,* 71 Wn.2d 462, 465–66, 429 P.2d 235 (1967):

Chapter 75, Laws of 1965, Ex. Ses., consisted of 7 sections; each of the first 6 was designated as a new section to RCW chapter 47.52 (Limited Access Facilities); each was obviously a revision of an existing section; and section 7 repealed each of the 6 sections as they existed prior to the revision. It was, in effect, not a repeal but an amendment of 6 sections of the 32 contained in chapter 47.52 relating to the establishment of limited access facilities.

The leading case on this phase of statutory construction is *Wright v. Oakley,* 46 Mass. (5 Met.) 400 (1843), wherein the court said:

In construing the revised statutes and the connected acts of amendment and repeal, it is necessary to observe great caution, to avoid giving an effect to these acts, which was never contemplated by the legislature. In terms, the whole body of the statute law was repealed; but these repeals went into operation simultaneously with the revised statutes, which were substituted for them, and were intended to replace them, with such modifications as were intended to be made by that revision. There was no moment, in which the repealing act stood in force, without being replaced by the corresponding provisions of the revised statutes. In practical operation and effect, therefore, they are rather to be considered as a continuance and modification of old laws, than as an abrogation of those old, and the reenactment of new ones. In order to construe them correctly, we must take the whole of the revised statutes, together with the act of amendment and the repealing act, and consider them in reference to the known purposes which the legislature had in view in making the revision. (p. 406)

Our Supreme Court also quoted from the case of *Bear Lake & River Waterworks & Irrigation Co. v. Garland,* 164 U.S. 1, 11–12, 41 L. Ed. 327, 332, 17 S. Ct. 7 (1896):

Although there is a formal repeal of the old by the new statute, still there never has been a moment of time since the passage of the act in 1888 when these similar provi- sions have not been in force. Notwithstanding, therefore,

this formal repeal, it is, as we think, entirely correct to say that the new act should be construed as a continuation of the old with the modification contained in the new act.

The *Duvall* opinion then refers to a similar situation in Wisconsin, as follows:

In the comparatively recent case of *State ex rel. Cities Service Oil Co. v. Board of Appeals*, 21 Wis.2d 516, 527, 124 N.W.2d 809 (1963), the Wisconsin court had under consideration the effect of the 1941 amendments to a "City planning" act. The court said:

While extensive changes were wrought as a result of the enactment of ch. 203, Laws of 1941, none of them were so incompatible with sec. 62.23, Stats. 1939, so as to terminate the operation of Milwaukee's adopting ordinance of October 15, 1923. *The effect is the same as if these changes had been made by simple amendment without repeal. We deem it immaterial that the device of repeal, with simultaneous creation of compatible new provisions, was used to accomplish the amending process.* (Italics ours.)

Many earlier cases to the same effect can be found in a 1961 A.L.R. Annotation (77 A.L.R.2d 336).

We are satisfied that the legislative intent (by Laws of 1965, Ex. Ses., ch. 75) was to amend and not to repeal the 6 sections which were revised.

*State ex rel. Duvall v. City Council, supra* at 466–67.

The *Duvall* case was followed in *State v. Carroll*, 81 Wn.2d 95, 500 P.2d 115 (1972), in which the court cited additional authorities and quoted RCW 1.12.020, which reads:

The provisions of a statute, so far as they are substantially the same as those of a statute existing at the time of their enactment, must be construed as continuations thereof.

The annotation in 77 A.L.R.2d 336 shows that this rule is followed by the overwhelming weight of authority.

█ It now remains to consider whether the rule of simultaneous repeal and reenactment applies to the present case. Prior to 1977, the law relating to juveniles and juvenile court consisted of chapter 160 of the Laws of 1913, as

amended and supplemented from time to time. These laws were codified in title 13 of RCW. For convenience, they will be referred to as the "former law." The first extraordinary session of 1977 enacted chapter 291 (now codified in title 13 of RCW, chapters .04, .30, .32, .34 and .40) and chapter 80 (now codified as RCW 26.44). For convenience, chapters 291 and 80 will be referred to as the "new" or "present" law. Both the former law and the new law relate to juveniles and juvenile court. Both laws declare the interest of the state in providing for the protection of dependent children and dealing with delinquent juveniles (or "juvenile offenders" as they are called in the new law), providing for probation services, and authorizing procedure terminating the parent–child relationship where there is no parent or guardian willing or capable of furnishing proper parental care. The new law amends many sections of the former law, repeals others and reenacts them in different form, recodifies some without any change in wording, and adds new sections. Substantially all the changes are procedural in character, with no fundamental change in basic rights or purpose.

Two examples of the treatment of specific sections of the former law will illustrate the methods used by the 1977 legislature to effect these changes. RCW 13.04.060 of the former law authorized the filing of a petition to take charge of a dependent or delinquent child. It was under this section that the petitions in the present case were filed. The new law amended this section by striking the words "or delinquent" and "or delinquency," and recodifying it without other substantial change as part of a new chapter in title 13 (*see* Laws of 1977, 1st Ex. Sess., ch. 291, §§ 32, 50). Juveniles who had violated the law and formerly known as juvenile delinquents were henceforth to be known as juvenile offenders and processed under sections 55 to 78 of the new law which was to be known as the Juvenile Justice Act of 1977. Section 78 provides:

All references to juvenile delinquents or juvenile delinquency in other chapters of the Revised Code of Washington shall be construed as meaning juvenile offenders or the commitment of an offense by juveniles as defined by this chapter.

Thus, the law governing the filing of a petition to take charge of dependent children under the former law was continued under the new law in identical language. There was a procedural change regarding juvenile law violators.

The other example is an instance of amendment by repeal and reenactment. In RCW 13.04.010, the former law defined a dependent child to be one who fell within any one of twelve specific categories of neglect, abuse, lack of proper parental control or improper or dangerous conduct or environment. Section 81 of the new law repealed this definition and section 31(2) enacted a new definition of a dependent child as one who fell within any one of ten broader categories of neglect, abuse, lack of proper parental control or improper or dangerous conduct or environment, now codified as RCW 13.34.030(2) and RCW 26.44.020(12). Thus, the amendment was effected by repealing the former definition and enacting a new definition which expressed substantially the same idea in different language.

The 1977 legislature itself did not regard chapter 291 as an act of repeal but rather as an amendatory act. In thirty different sections referring to chapter 291, it used the language "this 1977 amendatory act."

We conclude that the legislative intent was not to repeal any portion of the existing law relating to juveniles and juvenile court, but instead to continue, amend and supplement it. Consequently, its effect upon pending proceedings in juvenile court which had been commenced but not completed under the former law was not to terminate them but to allow them to be continued and completed under the new law. This result is well expressed in *Kraus v. Philadelphia*, 265 Pa. 425, 109 A. 226 (1919), which was quoted with approval by our Supreme Court in *State v. Carroll*, 81 Wn.2d 95, 98, 500 P.2d 115 (1972):

It is true that pending proceedings not fully consummated would normally fall with the repeal of the laws under which they were begun; but this result is not brought to pass where, as here, those laws are substantially reenacted by the repealing act itself. In such cases the proceedings may be continued and concluded under the new law, subject, of course, to such modifications as it provides.

The appellant lastly contends that the requirements of the statute relating to termination of the parent–child relationship have not been met. This statute, RCW 13.34.180 provided:

A petition seeking termination of a parent and child relationship may be filed in juvenile court. Such petition shall conform to the requirements of RCW 13.34.040 as now or hereafter amended and shall allege:

(1) That the child has been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency under RCW 13.34.030(2)(a) or (b); and

(2) That the conditions which led to the removal still persist; and

(3) That there is little likelihood that those conditions will be remedied so that the child can be returned to the parent in the near future; and

(4) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home; and

(5) That, if the finding of dependency has been pursuant to RCW 13.34.030(2)(b), necessary services have been provided or offered to the parent to facilitate a reunion; and

(6) That the parent has substantially failed to accept such services; and

(7) That if the parent is subject to an order of disposition pursuant to the finding of dependency, the parent has substantially failed to comply with the order.

Findings of fact Nos. 7–9 and 11–17 and supplemental findings of fact Nos. 1–5 show a substantial compliance with the statutory requirements.

The decision of the trial court was in all respects correct and is affirmed.

CALLOW, C.J., and SWANSON, J., concur.

Reconsideration denied April 9, 1980.

Review denied by Supreme Court July 18, 1980.