# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DAN ALBERTSON, as court appointed
limited guardian for L.O. and T.J.; and
TERESA JOHNSON, individually,

                Appellant,

        v.

PIERCE COUNTY,

            Respondent.

No. 71317-5-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: February 23, 2015

APPELWICK, J. — T.J. and L.O. were sexually abused by their grandfather, Finch, after DSHS placed the girls with him through the foster care system. Eleven years earlier, DSHS and Pierce County were informed that Finch had reportedly molested his daughter, Teresa Johnson, T.J. and L.O.'s mother. Despite the earlier allegation of abuse, DSHS's background check of Finch came back clear. Albertson, T.J.'s and L.O.'s limited guardian, filed suit contending that Pierce County's investigation of Teresa's abuse was negligent and that Pierce County owed T.J. and L.O. a duty to investigate under RCW 26.44.050. Teresa added individual claims based on RCW 4.24.010 for her children's abuses and RCW 26.44.050 for her own abuse. T.J.'s and L.O's claims were dismissed on summary judgment because of the public duty doctrine. Teresa's individual claim was dismissed under the statute of limitations. We affirm.

FACTS

Approximately June 1996, Child Protective Services (CPS)[1] sent the Pierce County Sheriff's Department (Pierce County) a sexual assault referral. Gwendolyn Johnson reported that her husband, Emanuel Finch, had sexually assaulted her two daughters, Veronica Johnson and Teresa Johnson.[2]

On or about July 17, 1996, the investigation was assigned to Detective Loren Page of Pierce County. On September 13, 1996, Detective Page began investigating. There was no phone number listed for the alleged victims on the report so Detective Page called the assigned case worker at CPS, Lazona Harris. Harris did not answer and Detective Page left her a message. By September 16, Detective Page had not heard from Harris and left another message on her voicemail. On September 17, Harris called Detective Page and said that she had already spoken with the listed victims. According to Harris, during her conversation with the alleged victims and their mother, each girl took opposite positions about whether the abuse happened. But, at least one of the girls[3] disclosed that she had been abused. One of the girls was embarrassed and did not wish to go into detail about the abuse.

On September 20, 1996, Detective Page went to the family's home. No one was home so Detective Page left a business card with a request to call as soon as possible. By September 23, there was no response and Detective Page sent a letter to Gwendolyn.

---

[1] CPS is the Child Protective Services Section of the State Department of Social and Health Services. RCW 26.44.020(4); RCW 26.44.020(8).

[2] Going forward, we refer to Gwendolyn and Teresa by their first names to avoid confusion. No disrespect is intended.

[3] The names in the record are redacted. As such, it is difficult to determine which girl made which statements regarding the abuse.

Detective Page did not hear back from Gwendolyn or either of the children. The letter was not returned by the post office. On October 12, 1996, Detective Page placed the case in an inactive file pending contact or further evidence.

In 1999 and 2000, Teresa gave birth to two daughters, T.J. and L.O. Teresa lost custody of both daughters to the foster care system. After a number of failed placements, the Department of Social and Health Services (DSHS) considered placing the girls with their grandfather, Finch. Before doing so, the girl's caseworker reviewed Finch's background check and found that it was clear. In 2007, DSHS placed the children in foster care with Finch. For three years, Finch raped and molested the girls until he was finally arrested, convicted, and sentenced.

On July 25, 2013, Dan Albertson as limited guardian for T.J. and L.O. sued Pierce County alleging negligent investigation of the original allegations against Finch in 1996, pursuant to chapter 26.44 RCW. On August 14, 2013, Teresa was added as an additional plaintiff, pursuant to RCW 4.24.010, based on her children's abuse.

On September 24, 2013, Albertson filed a motion for partial summary judgment regarding Pierce County's breach of a statutory duty. On November 6, 2013, Pierce County filed a CR 12(b)(6) motion to dismiss. Pierce County argued that it owed the plaintiffs no duty and that Pierce County's investigation was not the legal or factual cause of T.J.'s and L.O.'s harm.

Plaintiffs responded by submitting and citing to declarations of Teresa and their law enforcement expert, Sue Peters, as sufficient factual support for their assertions. Plaintiffs also asserted a new claim for the first time—that Teresa herself was owed a duty as a victim suspected of being abused.

3

On December 2, 2013, the trial court issued orders denying Pierce County's motion to strike the declarations, denying plaintiffs' motion for partial summary judgment, and granting Pierce County's motion to dismiss the complaint.[4]  In dismissing the plaintiffs' claims, the court concluded that Pierce County did not owe a legally cognizable duty to the unborn, unconceived children who did not fall within the particular, circumscribed class or exception to the public duty doctrine.  The trial court further concluded that Teresa's claims connected to the children's claims were similarly dismissed and that Teresa's individual claim was legally barred by the statute of limitations.

Albertson and Teresa appeal.

## DISCUSSION

Albertson argues that Pierce County owed T.J. and L.O. a duty under RCW 26.44.050 and that summary judgment dismissal was improper.  Teresa contends that her individual claims against Pierce County should survive even if Pierce County did not owe T.J. and L.O. a duty.

---

[4] Albertson and Teresa requested that the trial court treat Pierce County's motion to dismiss as a motion for summary judgment after it presented Teresa's and Sue Peters' declarations.  While it is somewhat unclear from the record, it does appear that the trial court treated Pierce County's motion as a motion for summary judgment.  Despite the order's reference to Pierce County's motion as a "motion to dismiss complaint," the trial court refers to Pierce County's motion as a motion for summary judgment in its summary findings and conclusions.  It further concluded that "there is no genuine issue of material fact that would dictate a contrary result."  CR 56(c).  Courts treat a CR 12(b)(6) motion to dismiss for failure to state a claim as a motion for summary judgment when matters outside the pleadings are presented to, and not excluded by, the superior court.  Sea-Pac Co. v. United Food & Commercial Workers Local Union 44, 103 Wn.2d 800, 802, 699 P.2d 217 (1985).  As the trial court denied Pierce County's motion to strike the declarations, we treat Pierce County's motion as a motion for summary judgment and evaluate the trial court's granting of that motion and appellants' challenge accordingly.

4

We review a grant or denial of summary judgment de novo. Washburn v. City of Federal Way, 169 Wn. App. 588, 609, 283 P.3d 567 (2012), aff'd, 178 Wn.2d 732, 310 P.3d 1275 (2013). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A defendant in a civil action is entitled to summary judgment when the party shows that there is an absence of evidence supporting an element essential to the plaintiff's claim. Las v. Yellow Front Stores, Inc., 66 Wn. App. 196, 198, 831 P.2d 744 (1992).

The threshold determination in any negligence action is whether a duty of care is owed by the defendant to the plaintiff. Taylor v. Stevens County, 111 Wn.2d 159, 163, 759 P.2d 447 (1988). If the defendant owed the plaintiff no duty, the negligence action fails. Folsom v. Burger King, 135 Wn.2d 658, 671, 958 P.2d 301 (1998). The existence of duty is a question of law that we review de novo. Id.; Hertog v. City of Seattle, 138 Wn.2d 265, 275, 979 P.2d 400 1999).

A defendant is liable for negligence for breach of a duty of care owed only to the plaintiff, not to the public at large. Yonker v. Dept. of Soc. & Health Servs., 85 Wn. App. 71, 76, 930 P.2d 958 (1997). When a governmental agency is the defendant, this rule is known as the public duty doctrine. Id. Thus, a government official's negligent conduct does not expose the government to tort liability unless the plaintiff can show that a duty was owed to the plaintiff individually, as opposed to the public in general. Id.

I. Albertson's Claims on Behalf of T.J. and L.O.

Albertson argues that Pierce County owed a duty to T.J. and L.O., because chapter 26.44 RCW creates a duty to all children who may be abused or neglected.

5

The trial court found that RCW 26.44.050 evidences no clear intent to encompass children in T.J.'s and L.O.'s situation. The trial court concluded that Pierce County did not owe a duty to T.J. and L.O., because they did not fall within this statutory exception to the public duty doctrine.

Courts have recognized numerous exceptions to the public duty doctrine. Yonker, 85 Wn. App. at 76. One such exception is when the legislature expresses by statute "'an intent to identify and protect a particular and circumscribed class of persons (legislative intent).'" Id. (quoting Bailey v. Forks, 108 Wn.2d 262, 268, 737 P.2d 1257 (1987)). A statute that creates a governmental duty to protect particular individuals can be the basis for a negligence action where the statute is violated and the injured party was one of the persons designed to be protected. Rodriguez v. Perez, 99 Wn. App. 439, 444, 994 P.2d 874 (2000).

Statutory interpretation is a question of law that we review de novo. State v. Gray, 174 Wn.2d 920, 926, 280 P.3d 1110 (2012). The court's primary duty is to ascertain and carry out the legislature's intent. Arborwood Idaho, LLC v. City of Kennewick, 151 Wn.2d 359, 367, 89 P.2d 217 (2004). Statutory interpretation begins with the statute's plain meaning. Ent v. Wash. State Criminal Justice Training Comm'n, 174 Wn. App. 615, 619, 301 P.3d 468 (2013). Plain meaning is discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole. Christensen v. Ellsworth, 162 Wn.2d 365, 373, 173 P.3d 228 (2007).

6

RCW 26.44.050 states in pertinent part:

> [U]pon the receipt of a report concerning the possible occurrence of abuse or neglect, the law enforcement agency or the department of social and health services must investigate and provide the protective services section with a report.

The plain language of RCW 26.44.050 does not specify to whom the law enforcement agency owes this duty to investigate nor who might bring an action for breach of any duty. However, case law interpreting chapter 26.44 RCW has indicated that children who are suspected of being abused and their parents comprise a protected class under chapter 26.44 RCW and may bring actions for negligent investigation. Perez, 99 Wn. App. at 445.

Albertson seeks to extend the protected class beyond that defined in Perez. Albertson asks this court to hold that the duty under RCW 26.44.050 is owed not only to those children (and parents of those children) who are suspected of being abused, but also to any child who might become at risk of abuse from the alleged abuser in the future. In his argument, he includes children not yet born or in existence at the time of the negligent investigation—when the duty to investigate would arise. He bases his arguments on chapter 26.44 RCW's declaration of purpose (RCW 26.44.010), cases interpreting RCW 26.44.050, the duty to report (RCW 26.44.030), and several cases addressing duties owed to children not yet in existence.

First, Albertson refers to RCW 26.44.010 to establish the broader class of individuals that he argues the law was designed to protect. RCW 26.44.010 is the legislature's declaration of purpose:

> [I]n the instance where a child is deprived of his or her right to conditions of minimal nurture, health, and safety, the state is justified in emergency intervention based upon verified information; and therefore the Washington state legislature hereby provides for the reporting of such cases to the

7

appropriate public authorities. It is the intent of the legislature that, as a result of <u>such reports</u>, protective services shall be made available in an effort to prevent <u>further abuses</u>, and to safeguard the general welfare of <u>such children</u>.

(Emphasis added).

Albertson argues that the declaration of purpose is clear that the duties owed are broad and extend to <u>all children</u> that are injured as a result of failure to carry out the obligations in RCW 26.44.050. In so doing, Albertson ignores the language regarding "further abuses" and "such children" that were the subject of "such reports" in RCW 26.44.010's stated purpose. We must give effect to every phrase or words in a statute wherever possible. <u>Nw. Steel Rolling Mills, Inc. v. Dept. of Revenue</u>, 40 Wn. App. 237, 240, 698 P.2d 100 (1985).

The plain language of RCW 26.44.010 is instructive when defining the relevant class of children protected by the statute. First, the statute contemplates that it protects children who have already suffered abuse. <u>Id.</u> Second, it acknowledges that authorities were made aware of the abuse. <u>Id.</u> Third, it dictates that such children are to receive protective services. <u>Id.</u> Implicit in the language of RCW 26.44.010 is the fact that the child was in existence at the time the abuse was discovered and thus their "further" abuse can be prevented.

Albertson contends that interpreting RCW 26.44.010 to apply to only the reported victims would be a ridiculous result that the legislature could not have intended—that there would be no duty owed to a second child in an abusive household when there was a report of abuse made only about the first child. The case law is clear, that children who are <u>suspected of being abused</u> also fall within the protected class under chapter 26.44 RCW and may bring an action for negligent investigation under the statute. <u>See Perez</u>,

99 Wn. App. at 445. A report of abuse about a particular child in a household triggers a duty to investigate that abuse, but does not automatically create a duty to investigate on behalf of another child, even in the same household. However, if in investigating the alleged abuse of the first child, law enforcement learns, discovers, or suspects that another child is being abused, the other child is then owed the duty to investigate those allegations. This was the case in Lewis v. Whatcom County, 136 Wn. App. 450, 452-53, 460, 149 P.3d 686 (2006).

The Lewis court held that a sheriff's department had a duty under RCW 26.44.050 to investigate when it discovered that the victim was likely being molested while it was investigating another girl's sexual abuse. Id. at 452-53. Albertson relies on Lewis to assert that RCW 26.44.050 creates a duty to all children who may be abused or neglected, regardless of the relationship between the child and his or her abuser. While the Lewis court did use those words, the statement was made in the context of clarifying that the duty was not limited to investigating cases where only a parent was the alleged perpetrator. Id. at 452. The court held that the duty to investigate extended to victimization by nonparents. Id. Contrary to Albertson's argument, Lewis did not raise any question as to duty owed to children for whom no complaint was made nor information of abuse known nor to children who were not yet born. Consequently, Albertson's argument is not well founded.

Albertson also claims that RCW 26.44.030 extends a duty to all children at risk of future harm. RCW 26.44.030(1)(a) establishes a duty to report child abuse or neglect. RCW 26.44.030(2) then provides:

> The reporting requirement . . . does not apply to the discovery of abuse or neglect that occurred during childhood if it is discovered after the child has

9

become an adult. However, if there is reasonable cause to believe other children are or may be at risk of abuse or neglect by the accused, the reporting requirement . . . does apply.

Notably, the section speaks to only the duty to report, not the duty to investigate. Id. And, the duty to report is much broader and binds a different class of individuals than the duty to investigate. Compare RCW 26.44.030(1)(a) with RCW 26.44.050. But, the language of the statute contemplates a duty to report the identity of other children are who are or may be at risk so that an investigation may be done. RCW 26.44.030(2). To facilitate that investigation, the children at risk must be in existence and identified. See Id. RCW 26.44.030(2) does not extend the duty to investigate to all yet-to-be-born children at risk of harm in the future.

Next, Albertson contends that RCW 26.44.050 is also intended to protect unborn children at risk of being abused in the future. He cites to In re Welfare of Frederiksen, 25 Wn. App. 726, 610 P.2d 371 (1980), for this assertion. In Frederiksen, DSHS took a baby immediately at birth and placed her in foster care after her parents had been determined to be unfit and after the parents' other two children had been deemed dependents. Id. at 728. The Fredericksen court made its decision based upon both chapter 26.44 RCW and RCW 13.34.030—the dependency statute. 25 Wn. App. at 728, 731, 740-41. The court opined that, "[t]here is no need to wait [to deem a child a dependent] until such a mother commits physical abuse or neglect and actually damages the child's development by failure to meet its physical, mental and emotional requirements if danger of such a result is clear and present." Fredericksen, 25 Wn. App. at 733. In other words, Fredericksen held that law enforcement's right to intervene and deem a child a dependent is triggered when children are suspected of being abused at the time of birth. By contrast, RCW

10

26.44.050 does not contemplate any law enforcement intervention until there is a report of abuse or suspected abuse, or discovery of abuse or suspected abuse against an existing child. Frederiksen does not stand for the proposition that the government owes a duty to unborn, unknown future children under RCW 26.44.050.

Albertson also cites to Harbeson v. Parke-Davis, Inc., 98 Wn.2d 460, 656 P.2d 483 (1983), and claims that the purpose of the statute is to protect future children—even those not yet in existence. In Harbeson, the court considered whether plaintiffs could maintain a wrongful birth and wrongful life action against physicians for the birth defects of their children resulting from medical advice they received while attempting to conceive a child. Id. at 462-63. The physicians provided the medical advice prior to the conception of their children. Id. at 463. In Harbeson, the court held that a duty may extend to children not yet conceived at the time of the negligent act or omission. Id. at 480. But, Harbeson was not interpreting the statute at issue here. The claims in Harbeson, and the holding, were specifically tailored to cases considering prenatal injuries to a fetus. Id. at 480. We decline to extend such a duty under this statute. That policy choice remains the prerogative of the legislature.

T.J. and L.O. do not fall within the circumscribed class of persons contemplated by the legislature to be protected by RCW 26.44.050. Therefore, the Pierce County owed these children no individual duty at the time of its investigation. No statutory exception to the public duty doctrine applies in this case. The trial court did not err when it dismissed T.J.'s and L.O.'s claims.

11

II. <u>Teresa Johnson's Claims Connected to T.J. and L.O.'s Abuse</u>

Teresa brought her own claim under RCW 4.24.010 based upon "the injury sustained to her children as a result of Pierce County's negligent investigation under [chapter 26.44 RCW]." In order to withstand summary judgment on her individual claims, Teresa must establish that she, herself, was owed a duty. Teresa contends that RCW 4.24.010 confers a duty owed to her, as a parent. RCW 4.24.010 authorizes a parent who has contributed to the support of a minor child to maintain or join an action as plaintiff for the injury of a child. For the first time on appeal, Teresa also contends that she is owed a duty as a parent under RCW 4.24.020. RCW 4.24.020 states that a parent may maintain an action for the seduction of a child. Neither statute creates a duty to the parent, only a derivative claim. Because T.J.'s and L.O.'s claim fails, Teresa's derivative claims also fail.

Teresa also argues that she herself is owed a duty as a parent under chapter 26.44 RCW. She cites to <u>Tyner v. Department of Social and Health Services</u>, which holds that a duty is owed to a child's parents under chapter 26.44 RCW when investigating allegations of child abuse. 141 Wn.2d 68, 82, 1 P.3d 1148 (2000). However, in the negligent investigation at issue here, Pierce County responded to allegations that Teresa was abused—not T.J. and L.O. <u>Tyner</u> thus provides a duty to <u>Teresa's</u> mother, Gwendolyn. For the duty outlined in <u>Tyner</u> to extend to Teresa as a parent, the efficacy of T.J.'s and L.O.'s investigation would have to be at issue, not Teresa's.

Pierce County did not owe Teresa a duty as a parent under RCW 4.24.010, RCW 4.24.020, or RCW 26.44.050. The trial court properly dismissed Teresa's individual claims.

12

III. Teresa Johnson's Claims Based on her Abuse

Teresa also maintains her own individual negligent investigation claim against Pierce County for the abuses she suffered.[5] The trial court found that Teresa's individual claim was barred by the statute of limitations. Teresa argues that her individual claim against Pierce County is preserved under the childhood sex abuse tolling statute, RCW 4.16.340.[6]

RCW 4.16.340(1) provides that all claims for childhood sexual abuse shall commence within the later of the following periods: (a) within three years of the act, (b) within three years of when the victim discovered the injury, or (c) within three years of the time the victim discovered that the act caused the injury for which the claim is brought, provided that the time limit for commencement of an action under this section is tolled for a child until the child reaches the age of 18. Teresa stated that the last time she was abused was within a few days of June 24, 1996, when she was approximately 15. As a result, the statute of limitation expired six years later, at the latest—in 2002. Teresa's claim was added to the opposition to Pierce County's 12(b)(6) motion to dismiss on November 13, 2013—over a decade after the abuse ended. The trial court did not err in finding that Teresa's individual negligent investigation claim was barred by the statute of limitations.

_____

[5] It is unclear whether Teresa continues to make this argument on appeal. In the interest of addressing all of Teresa's potential claims, we will address this argument.

[6] Pierce County argues that Teresa's claim would fail regardless, because there is no evidence that she was the victim of abuse after the allegedly negligent investigation. Teresa concedes that her abuse ended before the investigation. Nonetheless, we address her argument under RCW 4.16.340, as that was the basis for the trial court's determination.

13

The trial court did not err when it dismissed the claims on summary judgment.

We affirm.

Appelwick, J.

WE CONCUR:

_____                    Leach, J.