[No. 57435-3-I. Division One. December 26, 2006.]

STEPHANIE LEWIS, *Appellant*, v. WHATCOM COUNTY, *Respondent*.

---

*Mark Leemon* (of *Leemon & Royer, PLLC*), for appellant.

*David S. McEachran, Prosecuting Attorney,* and *Randall J. Watts, Deputy,* for respondent.

¶1 AGID, J. — Stephanie Lewis sued Whatcom County (County) for negligent investigation. She asserted that the county sheriff's department failed to investigate allegations that she was being abused by her uncle and, as a result, he continued to abuse her. The trial court granted summary judgment, adopting the County's argument that it owed her no duty to investigate because the abuse allegations were not against her parent or guardian. But RCW 26.44.050 creates a duty to all children who may be abused or neglected, regardless of the relationship between the child and his or her alleged abuser.[1] The cases on which the County relies focus on the rights of alleged abusers to sue under the statute and do not extend to victims of abuse. We reverse and remand.

## FACTS

¶2 Lewis alleges she was sexually molested by her uncle, Charles Goldsbury. The Whatcom County Sheriff's Department found out that Lewis was likely being molested in December 1991, while it was investigating another girl's sexual abuse allegations against Goldsbury. A letter from the doctor who interviewed the other girl accusing Goldsbury and a sheriff's department report both discussed the likelihood that he was also abusing Lewis. Both documents state that the other girl's mother said Lewis' mother was aware that Goldsbury was abusing her but did not report it because she needed to have Goldsbury and his wife

---

[1] At the time of the alleged abuse, former RCW 26.44.050 (1987) applied. Despite multiple amendments, the relevant language of the statute has not been changed. Throughout this opinion, we refer to the 1989 RCWs in effect at the time of the abuse. They are all substantially the same as the current RCWs, but some of the numbering is different. When the numbering is different, we will refer to the "former" RCW.

continue to provide child care. Despite these allegations, the sheriff's department did not investigate. Lewis continued to go to Goldsbury's house almost every day, where he allegedly continued to molest her, until the Goldsburys moved to Alaska in June 1992.

## DISCUSSION

¶3 We review the trial court's order granting summary judgment de novo.[2] The only issue raised here is the purely legal question[3] of whether the county sheriff's department owed a duty to Lewis under RCW 26.44.050. The County argues it owed no duty to Lewis because her abuser was her uncle rather than her parent. It contends RCW 26.44.050 allows an implied cause of action for negligent investigation only in cases where the alleged abuser is the victim's parent or guardian. This is a misreading of the statute and the applicable case law.

¶4 When interpreting a statute, our primary objective is to " 'ascertain and give effect to the intent of the Legislature.' "[4] Legislative intent is determined "not by unduly emphasizing any one section of a statute but rather by examining the statute as a whole."[5] We must first consider the plain language of the statute.[6]

¶5 RCW 26.44.050 provides in relevant part:

> Upon the receipt of a report concerning the possible occurrence of abuse or neglect, it shall be the duty of the law enforcement

---

[2] *Yonker v. Dep't of Soc. & Health Servs.*, 85 Wn. App. 71, 75, 930 P.2d 958 (citing *Doherty v. Mun. of Metro. Seattle*, 83 Wn. App. 464, 468, 921 P.2d 1098 (1996)), *review denied*, 132 Wn.2d 1010 (1997).

[3] *Id.* at 75-76 (citing *Johnson v. State*, 77 Wn. App. 934, 937, 894 P.2d 1366, *review denied*, 127 Wn.2d 1020 (1995)).

[4] *Koenig v. City of Des Moines*, 158 Wn.2d 173, 181, 142 P.3d 162 (2006) (quoting *Nat'l Elec. Contractors Ass'n v. Riveland*, 138 Wn.2d 9, 19, 978 P.2d 481 (1999)).

[5] *State v. Alvarez*, 74 Wn. App. 250, 257, 872 P.2d 1123 (1994) (citing *State v. Hansen*, 122 Wn.2d 712, 717, 862 P.2d 117 (1993)), *aff'd*, 128 Wn.2d 1, 904 P.2d 754 (1995).

[6] *Koenig*, 158 Wn.2d at 181 (citing *State v. Thornton*, 119 Wn.2d 578, 580, 835 P.2d 216 (1992)).

agency or the department of social and health services to investigate and provide the protective services section with a report . . . .

Nothing in the plain language of this statute, which imposes a duty to investigate on law enforcement, limits that duty to children who have been abused by their parents or guardians. Indeed, it is a broad mandate covering any report of possible abuse or neglect.

¶6 The County relies on the language in the statute's policy statement, RCW 26.44.010, to limit the class of protected children to those who have been abused by their parents or guardians. RCW 26.44.010 provides in relevant part:

> The Washington state legislature finds and declares: The bond between a child and his or her parent, custodian, or guardian is of paramount importance, and any intervention into the life of a child is also an intervention into the life of the parent, custodian, or guardian; however, instances of nonaccidental injury, neglect, death, sexual abuse and cruelty to children by their parents, custodians or guardians have occurred, and in the instance where a child is deprived of his or her right to conditions of minimal nurture, health, and safety, the state is justified in emergency intervention based upon verified information; and therefore the Washington state legislature hereby provides for the reporting of such cases to the appropriate public authorities. It is the intent of the legislature that, as a result of such reports, protective services shall be made available in an effort to prevent further abuses, and to safeguard the general welfare of such children . . . .

The County points out that the policy statement focuses on the parent-child relationship and speaks in terms of "prevent[ing] further abuses . . . to safeguard the general welfare of such children." It argues that this language limits the scope of the statute to children who have been abused by their parents.[7]

---

[7] We note that the purpose section also refers to "custodians," the role Goldsbury was playing at the time of the abuse.

¶7 This is a strained reading of the statute, particularly when one considers chapter 26.44 RCW as a whole. Former RCW 26.44.020(12) defines child abuse as the mistreatment of a child by "any person." Former RCW 26.44.020(18) defines "child protective services" as "those services provided by the department designed to protect children from child abuse and neglect . . . includ[ing] investigations of child abuse and neglect reports, including reports regarding child care centers." That child care centers are included indicates the legislature intended to extend the statute's protections to children who are abused outside the home by people other than their parents. Nowhere in the language of chapter 26.44 RCW is there any reference to protecting children only from abuse by their parents.

¶8 Further, at the time of the alleged abuse, chapter 26.44 RCW applied not only to abused children, but also to abused dependent adults.[8] Former RCW 26.44.010 required that dependent adults "also be afforded the protection offered children through the reporting and investigation requirements mandated in this chapter." We cannot think of any logical reason why the legislature would apply RCW 26.44.050's investigation and reporting requirements to children being abused by their parents and dependent adults, but not to children abused by someone other than their parents. We presume the legislature did not intend absurd results.[9] Based on the plain language of RCW 26-.44.050 and the context of chapter 26.44 RCW, we hold the legislature intended to impose on law enforcement a duty to reasonably investigate allegations that children like Lewis have been abused by someone other than their parents.

¶9 In *Yonker v. Department of Social & Health Services*, we held that children who may be abused or neglected can bring a claim for negligent investigation based on RCW 26.44.050 because they "fall within the particular and circumscribed class of individuals the Legislature intended

---

[8] Former RCW 26.44.010 (1987).

[9] *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003) (quoting *State v. Delgado*, 148 Wn.2d 723, 733, 63 P.3d 792 (2003) (Madsen J., dissenting)).

to protect" in enacting the statute.[10] In *Yonker*, the Department of Social and Health Services (DSHS) failed to investigate a mother's reports that her son was being abused by his father. The child continued being molested until his father confessed.[11] DSHS argued it did not have a duty to Yonker and thus could not be found liable for negligent investigation. We rejected that contention, holding that DSHS does have a duty to children who may be the victims of abuse.[12] The County argues a different result is warranted here because Lewis was abused by her uncle, not her parent. This is a distinction without a difference. In *Yonker*, we clearly stated that RCW 26.44.050 creates a duty to children "who may be abused or neglected," not just to those who are abused by their parents.[13]

¶10 The County does not address *Yonker* but instead relies on a line of cases that discussed what categories of adults could bring a claim under RCW 26.44.050 for failure to use reasonable care in child abuse investigations. These cases held that parents could sue[14] but child care providers could not.[15] They also limited the scope to investigations that result in a harmful placement decision.[16] But none of the cases the County relies on limits the primary duty owed to child victims of abuse. They are not on point because they all address the question of which alleged abusers have a cause of action for failure to discharge the duty to investi-

---

[10] 85 Wn. App. 71, 81-82, 930 P.2d 958, *review denied*, 132 Wn.2d 1010 (1997).

[11] *Id.* at 73-74.

[12] *Id.* at 81-82.

[13] *Id.* at 79 (emphasis omitted).

[14] *Tyner v. Dep't of Soc. & Health Servs.*, 141 Wn.2d 68, 82, 1 P.3d 1148 (2000).

[15] *Blackwell v. Dep't of Soc. & Health Servs.*, 131 Wn. App. 372, 379, 127 P.3d 752 (2006) (declining to extend the duty to foster parents); *Pettis v. State*, 98 Wn. App. 553, 560, 990 P.2d 453 (1999) (declining to extend the duty to child care workers).

[16] *Roberson v. Perez*, 156 Wn.2d 33, 47, 123 P.3d 844 (2005) (holding that a parent's voluntarily sending a child away based on fear of investigation is not a placement decision); *M.W. v. Dep't of Soc. & Health Servs.*, 149 Wn.2d 589, 602, 70 P.3d 954 (2003) (holding that an inappropriate physical exam of a young child is not the kind of harm contemplated by the statute).

gate. They do not limit the rights of child victims of abuse to a reasonable investigation.

¶11 In *Tyner v. Department of Social & Health Services*, the Supreme Court extended the duty of reasonable care in investigating child abuse to parents suspected of abusing their own children.[17] The court sought to protect children and their parents from unnecessary separations based on an inadequate investigation.[18] But nothing in *Tyner* suggests the court intended to strip away the rights of children who may be victims of abuse. The court explicitly stated that there exists a "hierarchy of interests," in which "[t]hose of the children prevail in cases of conflict."[19] Here, Lewis was abused by her uncle, not her parent. There was no conflict between her interest and her parent's interest, so the County owed her a clear duty to reasonably investigate the alleged abuse. *Tyner* is not on point here because there was no question of removing Lewis from her home.

¶12 In *M.W. v. Department of Social & Health Services*, the Supreme Court declined to extend the negligent investigation cause of action to situations where a child may be harmed by DSHS's investigative methods if they do not result in a harmful placement decision.[20] M.W. sought damages for negligent investigation because DSHS improperly did an overly-intrusive physical examination looking for signs that her adoptive parents had sexually abused her.[21] The court held that:

> a claim for negligent investigation against DSHS is available only to children, parents, and guardians of children who are harmed because DSHS has gathered incomplete or biased information that results in a harmful placement decision, such as removing a child from a nonabusive home, placing a child in

---

[17] 141 Wn.2d 68, 82, 1 P.3d 1148 (2000).

[18] *Id.* at 80.

[19] *Id.* at 79.

[20] 149 Wn.2d 589, 602, 70 P.3d 954 (2003).

[21] *Id.* at 591-92.

an abusive home, or letting a child remain in an abusive home. . . .[22]

¶13 This language does not preclude Lewis' negligent investigation claim. The County asserts that Lewis was not the subject of a "placement decision." It is true that DSHS was not responsible for placing Lewis. But the language on which the County relies does not limit the scope of the entire statute. Rather, it can fairly be read to address only the issues presented in *M.W.* The County also fails to explain how leaving a child in an abusive situation in which the parent sends her to an uncle who molests her is not a placement decision. Lewis' situation is indistinguishable from the one at issue in *Yonker*. There, the child lived with his nonabusive mother but had regular visitation with his abusive father. Because DSHS failed to investigate, visitation continued and so did the abuse. This was sufficient to support a claim for negligent investigation.[23] Similarly, Lewis is a child who remained in an abusive situation outside her primary residence because of an incomplete investigation by law enforcement. As such, she is within the class of persons who can bring a negligent investigation claim.

¶14 The limitations of claims discussed in *M.W.* are inapplicable for another reason. The question in that case was not whether DSHS owed a duty to M.W., but rather what the scope of that duty was. Here, the issue is simply whether the County owed Lewis a duty at all. The answer, according to *M.W.*, is clearly yes, because "a child who was allegedly harmed" is "clearly within the class of persons the legislature intended to benefit when it passed chapter 26.44 RCW."[24]

---

[22] *Id.* at 602.

[23] *Yonker*, 85 Wn. App. at 73-74.

[24] 149 Wn.2d at 596.

¶15 The County also contends that our decision in *Pettis v. State*[25] supports its position that law enforcement owes no duty to children abused by a nonparent. But *Pettis*, like all of the other cases the County cites, is not on point. In *Pettis*, we held that RCW 26.44.050's duty to undertake a reasonable investigation does not extend to child care workers accused of abuse because earlier cases that extended that protection to parents did so based on the "unique relationship [that] exists between parents and their children."[26] But this does not imply that law enforcement owes no duty to *children* who are abused by their child care providers. On the contrary, the premise that law enforcement does owe children a duty to reasonably investigate allegations of abuse by child care providers is bolstered by former RCW 26.44.020(18)'s specific reference to investigations of child care facilities.

¶16 The County cites *Blackwell v. Department of Social & Health Services*[27] as supporting its position that we consider only the biological parent-child relationship protected under RCW 26.44.050. But once again, the County conflates the duties the statute creates to benefit *children* with the more limited rights it confers on adult caretakers. In *Blackwell*, we stated that "[t]here is no case law supporting the expansion of DSHS's duty beyond biological parents and children."[28] But this does not mean we intended to limit the duty to investigate only to children who are abused by their biological parents. In *Blackwell*, we denied foster *parents* who were wrongly accused of abusing their foster children the right to sue for negligent investigation. That does not mean the converse is true. A foster *child* abused by his or her foster parent would still have a cause of action if DSHS refused to investigate. The language on which the County relies must be read in this context.

---

[25] 98 Wn. App. 553, 990 P.2d 453 (1999).

[26] *Id.* at 560.

[27] 131 Wn. App. 372, 127 P.3d 752 (2006).

[28] *Id.* at 376.

¶17 Nothing in our previous opinions limiting the rights of alleged abusers to sue for negligent investigation can or should be read to limit the duty of law enforcement to protect children from abuse. In *Yonker*, we held that RCW 26.44.050 creates a duty to children who may be abused or neglected, requiring the appropriate agency to investigate abuse allegations.[29] No court has held that RCW 26.44.050 does not impose a duty to investigate in situations where a child is being abused by someone other than his or her parent or guardian. We hold that law enforcement did owe Lewis, a child victim of alleged sexual abuse by her uncle, a duty to reasonably investigate those allegations. Thus the superior court made an error of law when it granted summary judgment.

¶18 We reverse and remand Lewis' negligent investigation claim for further proceedings consistent with this opinion.

APPELWICK, C.J., and SCHINDLER, J., concur.