# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| TAMIKA BOONE, individually, and on behalf of her minor children, D.B., individually, and D.B., individually, | No. 48502-8-II |
| Appellants, | |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | UNPUBLISHED OPINION |
| Respondent. | |

SUTTON, J. — Tamika Boone, individually and on behalf of her two children, sued the Department of Social and Health Services (Department) for damages based on sexual abuse of her children while attending a private in-home day care licensed by the Department.[1] The Boones allege that the Department owed them a duty to (1) investigate prior allegations of sexual abuse in 1992 and 1997, (2) perform background checks on the day care owner's husband, and (3) comply with mandatory reporting requirements. The Boones allege that the Department breached these alleged duties by failing to discover the day care owner's husband had a criminal history. Thus, the day care remained open and led to the abuse of the Boone children in 2006. The superior court granted the Department's motion for summary judgment and dismissed the Boones' claims. The

---

[1] Because Tamika has brought her claims on behalf of her and her children, the Boones generally refers to herself and her children collectively. Where Tamika Boone is referred to individually, we use her first name for clarity. We intend no disrespect. To protect their privacy, Tamika's children are referred to as the Boone children.

Boones appeal. The Boones fail to establish that the Department owed them any duty under their three theories. And, even if they had established that the Department owed them a duty, they fail to establish causation. Accordingly, we affirm the superior court's order granting summary judgment and dismissal.

## FACTS

### I. INITIAL LICENSING OF PATRICIA SMITH'S DAY CARE

Between June 1986 and January 27, 2006, the Department licensed Patricia Smith to operate a private in-home day care, Star Child Day Care (Smith's day care), out of her Tacoma home.[2] The day care was not owned, operated by, or affiliated with the State. Smith renewed her license in 1995, 1998, 2001, and 2004. Smith listed Abdullah Ali as her husband and resident, only on the 1995 renewal application. Smith's son was born in May 1992, but she did not tell the Department that her son lived in the home until January 2006.

### II. 1992 AND 1997 REFERRALS

In May 1992, the Department received a referral that two-and-a-half year old, RW, had disclosed that two unidentified people "stuck a stick up his butt" one day while he was attending Smith's day care in February 1992. Clerk's Papers (CP) 134. Both law enforcement and the Department investigated. The Department asked the Washington State Patrol to run a background check on Ali and found no criminal record. The Department also interviewed RW's mother, and learned that RW was examined by two doctors who found no evidence of sexual abuse. The Department interviewed Smith who confirmed that RW had attended the day care once in February

---

[2] The Boones' complaint alleges a negligent licensing claim against the Department, but the Boones appear to have abandoned that claim on appeal.

1992 and that Ali was not at her home that day. After investigating, the Department determined that the allegation was not supported by sufficient evidence. Law enforcement doubted that any abuse had occurred.

In 1997, the Department received another referral alleging sexual abuse at Smith's day care. The Department's licensing division investigated the 1997 referral and found it to be not valid.

### III. 2006 REFERRALS AND LICENSE REVOCATION

In January 2006, the Department received a referral by MT's mother that Smith's son had sexual contact with MT at the day care. MT attended Smith's day care from 2002 until 2005. MT's mother informed the Department that she had reported the allegation to Smith, but Smith denied the allegation. MT's mother did not allege any abuse by Ali of MT. The referral regarding MT was sent to law enforcement for investigation. Law enforcement referred MT's case to the prosecutor, but the Department's Child Protective Services (CPS) division entered an inconclusive finding as to Smith because there was no evidence that Smith knew abuse was occurring.

The licensing division also began an investigation into Smith's day care. An investigator interviewed Smith regarding MT's allegations. Smith admitted that MT's mother had reported the allegations, but Smith did not believe the allegations were true. Law enforcement informed the investigator that Ali had a criminal history, and as a result, the investigator requested a background check on Ali. Law enforcement also disclosed that Ali had listed Smith's address as his address for a number of years. After receiving the background check, the Department determined that Ali had a criminal history that would disqualify him from being around day care children. The

3

Department also learned that Smith had been untruthful about several things on her licensing applications, including failing to identify either her youngest son or Ali as residents of the home.

On January 27, the Department summarily suspended Smith's day care license. On January 28, the licensing division contacted all of the parents of children who were attending Smith's day care and informed them that the day care was closed. On March 10, the Department mailed a letter to all children who were identified as attending the day care at the time.

Smith requested a hearing to stay the summary suspension of her license. On March 14, an administrative hearing was held on Smith's request to stay the suspension of her license. The administrative law judge (ALJ) found that Smith had failed to disclose her youngest son on the licensing application even though she knew she was required to disclose minor children living in the home. The ALJ also found that Smith failed to report the allegations regarding MT to the Department. And the ALJ found that Ali had avoided becoming a permanent resident in Smith's home so that she could keep her day care license. The ALJ denied Smith's request to stay summary suspension of her license. On May 23, the Department revoked Smith's child care license. Smith's day care never reopened.

IV. ALLEGATIONS REGARDING THE BOONE CHILDREN

The Boone children attended Smith's day care irregularly between 2004 and 2006. No referrals were made to the Department during the time that the Boone children attended Smith's day care.

On September 7, 2006, Tamika reported that the Boone children had been abused by Smith's husband and son while attending Smith's daycare in 2004-05. After the Department and

law enforcement investigated this referral, the Department determined that the sexual abuse allegation against Smith's husband was founded.

## V. BOONE'S LAWSUIT

In 2015, the Boones filed a complaint against the Department alleging the Department "negligently failed to take proper and timely investigatory, licensing and/or other remedial actions against Ms. Smith in such a way that would have prevented the sexual abuse" of the Boone children. CP at 8.[3]

The Department filed a motion for summary judgment arguing that the Department did not owe any duty to the Boones. The Boones filed a response to the Department's motion for summary judgment alleging the following facts:

- In 1992, the Department completed an incomplete background check on Smith's husband, Abdullah Ali;

- In 1995, Smith listed Ali as a resident of the house on her licensing application;

- Ali had three criminal convictions: Attempted Assault in the Third Degree – 2001; Violation of an Anti-Harassment Order − 2000; Resisting Arrest − 2000;

- During the January 2006 investigation, the Department determined Ali "has an extensive history with law enforcement and this includes charges that would disqualify him from being around child care children."

- In 1992, Child Protective Services (CPS) investigated an allegation of sexual abuse against a child who attended the daycare. CPS closed the investigation based on insufficient evidence; and

- In 1997, Licensing investigated an allegation of sexual misconduct and failed to take any action.

CP at 222.

---

[3] The Boones later filed an amended complaint. The amended complaint added Smith as a defendant and added claims against Smith for her negligence in operating the day care. The amended complaint did not amend the claims against the Department.

5

Based on this information, the Boones argued that the Department negligently failed to perform background checks on Ali when relicensing Smith's day care between 1995 and 2006. The Boones also argued that the Department negligently investigated the 1992 and 1997 sexual abuse allegations because a complete investigation should have included a background check on Ali. According to the Boones, if the Department had performed the appropriate background checks either during relicensing or during the 1992 and 1997 investigations, Ali's disqualifying criminal history would have been discovered, and Smith's day care would have been closed before Boone's children were abused.

The superior court granted the Department's motion for summary judgment and dismissed all the Boones' claims against the Department.[4] The Boones appeal.

ANALYSIS

On appeal, the Boones argue that (1) the Department negligently investigated the 1992 and 1997 allegations of abuse involving other children at Smith's day care under RCW 26.44.050, (2) the Department negligently failed to conduct a background check on Ali as required under RCW 43.43.832, and (3) the Department's employees failed to comply with mandatory reporting requirements under RCW 26.44.030(1) when the Department learned Ali may have had unsupervised access to day care children. The Boones' claims fail because they fail to establish that the Department owed them any duty under the three statutes they identified. Moreover, even

_____

[4] After the superior court granted the Department's motion for summary judgment, the Boones took a voluntary non-suit for their claims against Smith. The trial court granted the Boones' voluntary non-suit and dismissed the claims against Smith without prejudice.

if the Boones had established the Department owed them a duty, they fail to establish a genuine issue of material fact as to causation.

## I. STANDARD OF REVIEW

We review a superior court's order granting summary judgment de novo. *M.W. v. Dep't of Social & Health Servs.*, 149 Wn.2d 589, 595, 70 P.3d 954 (2003). We view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *McCarthy v. Clark County*, 193 Wn. App. 314, 328, 376 P.3d 1127, *review denied*, 186 Wn.2d 1018 (2016). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). "'A material fact is one that affects the outcome of the litigation.'" *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 164-65, 273 P.3d 965 (2012) (quoting *Owen v. Burlington N. Santa Fe R.R.*, 153 Wn.2d 780, 789, 108 P.3d 1220 (2005)). If reasonable minds can reach only one conclusion on an issue of fact, that issue may be determined on summary judgment. *McCarthy*, 193 Wn. App. at 328.

## II. NEGLIGENT INVESTIGATION CLAIM

The Boones do not claim that the Department negligently investigated the September 2006 referral of her children or that a biased or incomplete investigation resulted in a harmful placement from the September 2006 referral. Thus, they do not assert a negligent investigation claim as recognized in *M.W*. Instead, the Boones argue that the Department's duty to investigate allegations of abuse or neglect with reasonable care extends to every child who could foreseeably be harmed by a negligent investigation, including children who are not the subject of the reported abuse or neglect. Br. of App. at 19-20. Based on this alleged duty, the Boones argue that the Department

7

negligently investigated the 1992, 1997, and January 2006 referrals by failing to discover Ali's criminal history. Br. of App. at 20.

We decline to extend the Department's duty to investigate with reasonable care under RCW 26.44.050 to children who are not the subject of the reported abuse or neglect.

RCW 26.44.050 states,

[U]pon the receipt of a report concerning the possible occurrence of abuse or neglect, the law enforcement agency or the department of social and health services must investigate and provide the protective services section with a report in accordance with chapter 74.13 RCW, and where necessary to refer such report to the court.

Our Supreme Court has "previously recognized that this statutory duty implies a cause of action for children and parents for negligent investigation in certain circumstances." *M.W.*, 149 Wn.2d at 595. A negligent investigation claim is a narrow statutory cause of action that arises from the State's duty under RCW 26.44.050 to investigate allegations of child abuse or neglect. *Tyner v. Dep't of Soc. & Health Servs.*, 141 Wn.2d 68, 82, 1 P.3d 1148 (2000); *M.W.,* 149 Wn.2d at 591. To prevail on a negligent investigation claim, a plaintiff must prove both: (1) that the Department failed to conduct an adequate investigation and (2) that the investigation's deficits results in a harmful placement decision by the Department. *M.W.*, 149 Wn.2d at 595.

A.  CLASS OF PERSONS PROTECTED UNDER RCW 26.44.050

In *M.W.*, our Supreme Court provided the analytical framework to apply when determining whether to expand the cause of action for negligent investigation. 149 Wn.2d at 596. *M.W.* applied the analysis from *Bennett v. Hardy*[5] to determine whether RCW 26.44.050 includes an implied

---

[5] *Bennett v. Hardy*, 113 Wn.2d 912, 919, 784 P.2d 1258 (1990).

cause of action for children who are physically injured by the conduct of Department employees during the course of an investigation into alleged child abuse or neglect. *M.W.*, 149 Wn.2d at 596. Under the *Bennett* analysis, we consider:

> (1) whether the plaintiff is within the class of persons for whose benefit the statute was enacted; (2) whether the legislative intent supports creating a remedy; and (3) whether the underlying purpose of the legislation is consistent with inferring a remedy.

*M.W.*, 149 Wn.2d at 596 (citing *Bennett v. Hardy*, 113 Wn.2d 912, 920-21, 784 P.2d 1258 (1990)). Here, the first and third factors are at issue.[6]

As it relates to the investigations done in 1992, 1997, and January 2006, the Boone children are not within the class of persons for whose benefit RCW 26.44.050 was enacted. The Boones allege that they are within the class of persons because RCW 26.44.050 was enacted to protect all abused children. Br. of App. at 19-20. But, Boone's reading of the class of persons for whose benefit RCW 26.44.050 was enacted is too broad. Under RCW 26.44.050, the duty to investigate with reasonable care is triggered by "a report concerning the possible occurrence of abuse or neglect." Therefore, the class of persons protected by the duty to investigate are the children who are the subjects of a report of possible abuse or neglect. Insofar as the Boones rely on the investigations into the abuse of other children in the day care in 1992, 1997, and January 2006, the Boones are not within the class of persons for whose benefit RCW 26.44.050 was enacted because Boone's children were not the subjects of the reports of alleged abuse that triggered those investigations.

---

[6] *M.W.* recognized that the second factor is not at issue because our Supreme Court has already held that the legislature intended to create a remedy under RCW 26.44.050. 149 Wn.2d at 596-97.

The Boones cite to two cases, *Lewis v. Whatcom County*, 136 Wn. App. 450, 149 P.3d 686 (2006) and *Yonker v. Dep't of Social & Health Servs.*, 85 Wn. App. 71, 930 P.2d 958 (1997). However, neither case supports the conclusion that children and families who were not the subject of the report triggering the investigation are within the class of persons for whose benefit RCW 26.44.050 was enacted.

In *Lewis*, while the Whatcom County Sheriff's Office was investigating a report of child abuse against one alleged victim, the sheriff's office received information that the plaintiff was likely also being abused. 136 Wn. App. at 452-53. However, the sheriff's office did not investigate the additional allegations of abuse involving the plaintiff. *Lewis*, 136 Wn. App.at 453. In *Lewis*, the sheriff's office argued that RCW 26.44.050 only imposed a duty to investigate with reasonable care to children who were being abused by a parent or guardian. 136 Wn. App. at 453. The court disagreed and stated that the statute was "a broad mandate covering any report of possible abuse or neglect." *Lewis*, 136 Wn. App. at 454.

Although the plaintiff in *Lewis* was not the subject of the original report alleging abuse, there were specific allegations that she was also being abused. *Lewis*, 136 Wn. App. at 452. Because the plaintiff was the subject of specific allegations of abuse, she was within the class of persons for whose benefit RCW 26.44.050 was enacted, and the sheriff's office owed her a duty to investigate the allegations with reasonable care. *Lewis*, 136 Wn. App. at 460. *Lewis* does not support Boone's contention that RCW 26.44.050 was enacted for the benefit of children or families who are not the subject of the reported allegations of abuse or neglect.

Similarly, in *Yonker,* the plaintiff was also the child who was the subject of the reported abuse that triggered the duty to investigate. In *Yonker*, CPS failed to take any action after a child's

mother reported possible sexual abuse by the child's father. 85 Wn. App. at 73-74. Prior to *Yonker,* courts recognized that the State has a duty to act reasonably once it decides to investigate child abuse; *Yonker* held that the State may be liable for failing to investigate when it receives a report of possible abuse or neglect. 85 Wn. App. at 77, 80-81.

Although the *Yonker* court recognized that the class of people for whose benefit the legislature enacted RCW 26.44.050 were children who may be abused or neglected, it also recognized that the duty to investigate was triggered by a report of abuse or neglect. *Yonker*, 85 Wn. App. at 79-81. Nothing in the case law that the Boones cite supports their assertion that children or families who are not subjects of the reported child abuse or neglect are within the class of persons for whose benefit RCW 26.44.050 was enacted.

Here, the Boones are not within the class of persons for whose benefit RCW 26.44.050 was enacted because they were not the subject of the 1992, 1997, and January 2006 reports of abuse that they allege the Department negligently investigated. RCW 26.44.050 was enacted for the benefit of children or families who are the subject of a report of alleged abuse or neglect, and the statute protects those children and families by imposing a duty to investigate, with reasonable care, specific reports of child abuse or neglect. Accordingly, the duty to investigate is a duty to the children or families who are the subject of the reported abuse or neglect because those are the persons for whose benefit RCW 26.44.050 was enacted. Because the Boones only allege that the Department negligently investigated the 1992, 1997, and January 2006 reports of abuse, which did not contain allegations that the Boone children were abused or neglected, they are not within the class of persons for whose benefit RCW 26.44.050 was enacted. Accordingly, the Department's

duty to investigate with reasonable care does not extend to the Boones under their theory of the case.

B. UNDERLYING PURPOSE OF LEGISLATION

Moreover, the underlying purpose of the legislation does not support expanding the negligent investigation cause of action to the circumstances here. RCW 26.44.050 addresses "the abuse of children within the home and unnecessary interference with the integrity of the family." *M.W.*, 149 Wn.2d at 602. Specifically, the legislature has stated that "[i]t is the intent of the legislature that, as a result of such reports, protective services shall be made available in an effort to prevent further abuses, and to safeguard the general welfare of such children." RCW 26.44.010.

Based on the stated legislative purpose, RCW 26.44.050 does not encompass a remedy for the facts presented here. RCW 26.44.050 is meant to respond to reports of child abuse or neglect and to provide protection for children when there is reason for the Department or law enforcement to believe a child is being abused or neglected. The duty to investigate reasonably is not meant to protect all children from all harm. *M.W.*, 149 Wn.2d at 598-99. The Boones' argument is inconsistent with the legislative intent because RCW 26.44.050 imposes a duty to investigate with reasonable care reports of child abuse or neglect in order to protect the child or children who are the subjects of the reported abuse or neglect.

Under RCW 26.44.050, the Department's duty to investigate with reasonable care is triggered by a report of child abuse or neglect. Once a report is made, the Department has a duty to that particular child and family to investigate with reasonable care and provide protective services to the child and family. The Department's duty to investigate a report of child abuse or

neglect with reasonable care does not extend to all children and their families. Accordingly, we decline to expand the duty to investigate with reasonable care under RCW 26.44.050 to the Boones.

## III. CAUSATION

Even if the Department owed a duty to the Boones, the Department argues that summary judgment was proper because the Boones cannot establish causation on any of their claims. The Boones argue that the Department's failure to conduct Ali's background checks resulted in injury to the Boone children because, if the proper background checks had been performed, Smith would not have been licensed and the Boone children would not have attended Smith's day care. The Boones also argue that, if the referrals in 1992 and 1997 had been properly investigated, the Department would have learned that Ali was living in the house, the Department would have performed a background check, and the Department would have revoked Smith's license prior to the Boone children attending Smith's day care. None of these arguments create any genuine issues of material fact as to causation.

Proximate cause requires two elements: cause in fact and legal causation. *Tyner*, 141 Wn.2d at 82. Cause in fact refers to actual or "but for" causation. *Tyner*, 141 Wn.2d at 82. But, as our Supreme Court has explained, legal causation is a "much more fluid concept:"

> It is grounded "in policy determinations as to how far the consequences of a defendant's acts should extend." The focus in legal causation analysis is on "whether, as a matter of policy, the connection between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability." This inquiry depends upon "mixed considerations of logic, common sense, justice, policy, and precedent."

*Tyner*, 141 Wn.2d at 82 (internal quotations omitted) (quoting *Schooley v. Pinch's Deli Market, Inc.*, 134 Wn.2d 468, 478-79, 951 P.2d 749 (1998). Although cause in fact is generally a question

left to the jury, legal causation is not. *Tyner*, 141 Wn.2d at 82. Here, the acts the Boones complain of are simply too attenuated and speculative to support legal causation.

The Department had no obligation to run background checks on Ali after 1995 because Smith did not disclose Ali as a resident of the house on her day care licensing applications submitted to the Department, and there is no claim that Smith did not meet the statutory requirements to be licensed. RCW 74.15.100. Therefore, the Boones' claims rest on the Department's alleged failure to run background checks on Ali in 1992 when Smith disclosed he was living in the home, and in 1995 and 1997 after the investigations into reported abuse allegations of other children in Smith's day care. But, the Boones cannot demonstrate that a background check on Ali in 1992, 1995, or 1997 would have resulted in the Department's revocation of Smith's day care license because Ali did not have any criminal convictions until his 2000 conviction for attempted third degree assault.

Moreover, even if Ali did have a disqualifying criminal history that was discovered during a background check in 1992, 1995, or 1997, there is no guarantee that the background check would have resulted in the Department's revoking Smith's license or permanently closing Smith's day care. For example, evidence in the record suggests that, after the license suspension in 2006, Ali offered to move out of state so that Smith could continue operating her day care. However, the Department decided to pursue revocation because of Smith's failure to disclose and report Ali residing in her house. It is possible that in 1992, 1995, or 1997, the Department would have allowed some type of arrangement that would have allowed Smith to be licensed and continue operating. Trying to determine the effect of a background check at some point in time

approximately 10 years earlier is speculative and such speculation cannot support legal causation. *Hungerford v. Dep't of Corr.*, 135 Wn. App. 240, 252, 139 P.3d 1131 (2006).

Because the Boones cannot demonstrate that the Department's alleged failure to perform background checks on Ali was the legal cause of her or her children's injuries, summary judgment was proper.

## IV. MANDATORY REPORTING

The Boones also claim that the Department had a duty as a mandatory reporter under RCW 26.44.030(1). The Boones claim that the Department's duty as mandatory reporters was triggered "[u]pon recognition that Ms. Smith was permitting Mr. Ali to have unsupervised access to children of the daycare . . . ." Even assuming the Department had reason to know that Ali had unsupervised access to the children in the day care, that knowledge does not trigger a duty owed by the Department to the Boones under the mandatory reporting statute.

RCW 26.44.030(1)(a) requires certain groups of people, including Department employees, to report when there is "reasonable cause to believe that a child has suffered abuse or neglect." The parties do not dispute that RCW 26.44.030 creates an actionable duty against mandatory reporters who fail to report. However, the Boones fail to explain how knowing that Ali had unsupervised access to children created reasonable cause to believe that a child suffered abuse or neglect in the day care. "'Reasonable cause' means a person witnesses or receives a credible written or oral report alleging abuse, including sexual contact, or neglect of a child." RCW 26.44.030(1)(b)(iii). Nothing in the record before us demonstrates that a Department employee

had reasonable cause to believe a child had suffered abuse or neglect in the day care prior to the January 2006 referral. Therefore, no Department employee failed to report suspected abuse or neglect as required by the statute. Accordingly, the Boones have no cause of action under the mandatory reporter statute, RCW 26.44.030.

## V. CLAIMS BARRED BY THE PUBLIC DUTY DOCTRINE

When there is no similar or corresponding private action comparable to the State's actions, we examine whether, under the public duty doctrine, the State owes a duty to a particular plaintiff. The policy underlying the public duty doctrine is that "legislation for the public benefit should not be discouraged by subjecting the government to unlimited liability for individual damages." *Donohoe v. State*, 135 Wn. App. 824, 834, 142 P.3d 654 (2006). The public duty doctrine presumes that the State's actions serve its duty to the public as a whole rather than to a particular individual plaintiff. *See Donohoe*, 135 Wn. App. at 832. The public duty doctrine is a "focusing tool" used to determine whether the governmental entity owes a duty to the public as a whole or to a particular individual. *Munich v. Skagit Emergency Commc'n Ctr.*, 175 Wn.2d 871, 878, 288 P.3d 328 (2012); *Taggert v. State,* 118 Wn.2d 195, 217-18, 822 P.2d 243 (1992). This distinction is necessary because "a duty owed to all is a duty owed to none." *Munich*, 175 Wn.2d at 878.

Under the public duty doctrine, a regulatory scheme that imposes a duty owed to the public as a whole does not impose any actionable duty owed to a particular individual. *Donohoe*, 135 Wn. App. at 833 (quoting *Babock v. Mason County Fire Dist. No. 6*, 144 Wn.2d 774, 784-85, 30

P.3d 1261 (2001)). Of the four exceptions to the public duty doctrine only one is relevant here.[7]

The Boones argue that the legislative intent exception, applies to their claims of negligent licensing

and failure to perform background checks. Specifically, the Boones argue that the Department

owes them a duty under the licensing statute and the background check statute. Neither statute

creates a statutory duty to the Boones based on the record before us.

---

[7] The Boones also assert that the Department assumed a duty that created a special relationship between her and her children and the Department. The Boones state,

> Here, DSHS assumed responsibility for conducting background checks, overseeing daycares, investigating child abuse allegations, and warning families of the ongoing abuses (except the Boone family) in relation to the overt indications that Mr. Ali should not be near children.

Br. of App. at 29.

There are two categories of special relationship exceptions to the public duty doctrine: express assurances and the duty to control the conduct of a third party under the *Restatement (Second) of Torts* § 315. *Donohoe*, 135 Wn. App. at 835-36. The *Restatement (Second) of Torts* § 315 provides:

> "There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

> (a) a special relation exists between the actor and the third person which imposes *a duty upon the actor to control the third person's conduct*, or

> (b) a special relation exists between the actor and the other which gives to the other a *right to protection*."

*Donohoe*, 135 Wn. App. at 836 (quoting RESTATEMENT (SECOND) OF TORTS § 315 (AM. LAW INST. 1965)).

The Boones have failed to offer any argument, authority, or citation to the record that supports how a generic assertion of "assumption of duty" meets the specific requirements of the special relationship exception to the public duty doctrine. Br. of App. at 29-30. We will not consider arguments that are made without argument or citation to authority. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Accordingly, we do not consider the Boones' assertion that the Department assumed a duty that created a special relationship and, therefore, that a cause of action exists.

The legislative intent exception to the public duty doctrine applies when the statute evidences "'an intent to identify and protect a particular and circumscribed class of persons.'" *Donohoe*, 135 Wn. App. at 844 (quoting *Bailey v. Town of Forks*, 108 Wn.2d 262, 268, 737 P.2d 1257 (1987)). The legislative intent must be clearly expressed. *Donohoe*, 135 Wn. App. at 844. The legislative intent may not be implied. *Donohoe*, 135 Wn. App. at 844. And, "the evidence of clear legislative intent necessary to create a duty 'must be created by a statute and not by regulations, manuals and directives purportedly authorized under [a] statute.'" *Smith v. State*, 135 Wn. App. 259, 281, 144 P.3d 331 (2006) (internal quotations omitted) (quoting *Cameron v. Janssen Bros. Nurseries, Ltd.*, 7 F.3d 821, 826 (9th Cir. 1993), *overruled in part on other grounds by United States v. Olson*, 546 U.S. 43, 126 S. Ct. 510, 163 L. Ed. 2d 306 (2005)). "To ascertain legislative intent, courts look to the statute's declaration of purpose." *Donohoe*, 135 Wn. App. at 844 (citing *Dorsch v. City of Tacoma*, 92 Wn. App. 131, 134, 960 P.2d 489 (1998)).

A. NEGLIGENT LICENSING

The Boones specifically state that they are not alleging a negligent licensing claim, and are only alleging claims under RCW 26.44.030, the mandatory reporter statute, and RCW 43.43.832, regarding background checks. However, the Boones specifically argue that the Department has a duty arising from its licensing of the day care. Therefore, we address whether the Department's licensing authority creates a statutory duty owed by the Department to the Boones. Based on our prior cases, the Department's general licensing authority does not create an actionable duty.

The Department inspects a day care during the initial licensing and periodically to determine compliance under chapter 74.15 RCW and its accompanying licensing regulations. Unless the Department receives a referral alleging abuse or neglect or a report of a licensing

18

violation, the Department does not have a duty to inspect or visit a private in-home day care. There is no evidence that Smith should not have been licensed as a private in-home day care or that she failed to meet the statutory licensing requirements prior to the Department's decision to summarily suspend her license in 2006. And the only referrals were in 1992 and 1997, before the Boone children attended the day care, and in January 2006, after the Boone children stopped attending the day care.

In *Donohoe*, we held that the statutory scheme governing licensing of nursing homes did not create a duty to the plaintiff individually but rather to the public as a whole. 135 Wn. App. at 847-48. The declared purpose of the licensing scheme for nursing homes was to "'promote safe and adequate care and treatment'" of nursing home patients. *Donohoe*, 135 Wn. App. at 846 (emphasis omitted) (quoting RCW 18.51.005). And, the Department was required to create rules, regulations, and standards for licensed nursing homes "'in the interest of public health, safety, and welfare.'" *Donohoe*, 135 Wn. App. at 846 (quoting RCW 18.51.070). Based on this language, we held that the duty regarding licensing nursing homes was a duty owed to the public as a whole, not a duty owed to an individual nursing home resident.

The Boones argue that *Donohoe* does not apply here because the legislature used stronger language in articulating the purpose behind the Department's licensing of day cares. RCW 74.15.010 states the legislative purpose of the licensing scheme for day cares is, in relevant part:

> (1) To safeguard the health, safety, and well-being of children . . . receiving care away from their own homes, which is paramount over the right of any person to provide care;
>
> . . . .
>
> (5) To license agencies as defined in RCW 74.15.020 and to assure the users of such agencies, their parents, the community at large and the agencies themselves

that adequate minimum standards are maintained by all agencies caring for children.

The Boones rely on the general language "to safeguard the health, safety and well-being of children" to argue that the legislature intended to create a specific duty under the licensing statute. But this argument ignores the more specific stated legislative purpose that the Department's licensing duty under RCW 74.15.010 is owed equally to children, their parents, the community at large, and the agencies. Under this statement of purpose, the legislature has specifically provided that any duty the Department may owe to a child and his or her parent is the same as the duty owed to the general public. Accordingly, the Boones' claim for a cause of action based on the Department's licensing authority does not meet the legislative intent exception and they have no cognizable claim under the licensing statute.

## B. FAILURE TO PERFORM BACKGROUND CHECKS

The Boones make a similar argument that, under RCW 43.43.832, the Department had a duty to perform a background check on Ali based on the legislative intent exception to the public duty doctrine. The Department argues that it does not owe a duty to the Boones as individuals and, therefore, the legislative intent exception is not met and the Boones have no cause of action against the Department for failure to conduct background checks. Br. of Resp. at 38-40. We hold that the legislative intent exception is not met and summary judgment on the Boones' claims for failure to perform background checks on this basis was proper.

The legislature has not declared a specific purpose for chapter 43.43 RCW. Because the legislative intent exception to the public duty doctrine requires an express statement of intent in the declared purpose stated by the legislature, the lack of a declared purpose defeats the argument

20

that RCW 43.43.832 creates an actionable duty. However, even if we look to the language of the statute itself, there is no express purpose that creates a specific duty to the Boones.

RCW 43.43.832 states in relevant part:

> (1) The legislature finds that businesses and organizations providing services to children, developmentally disabled persons, and vulnerable adults need adequate information to determine which employees or licensees to hire or engage. The legislature further finds that many developmentally disabled individuals and vulnerable adults desire to hire their own employees directly and also need adequate information to determine which employees or licensees to hire or engage. Therefore, the Washington state patrol identification and criminal history section shall disclose, upon the request of a business or organization as defined in RCW 43.43.830, a developmentally disabled person, or a vulnerable adult as defined in RCW 43.43.830 or his or her guardian, an applicant's conviction record as defined in chapter 10.97 RCW.

RCW 43.43.832(1) contains the most explicit statement of legislative intent and states that the purpose of requiring background checks is to allow employers to make fully informed employment decisions. Although the implication is that this statute protects the vulnerable populations referenced in the statute, nothing in the statute creates a duty specifically to children or their parents. Accordingly, there is no legislative intent that expressly creates a specific duty to the Boones under RCW 43.43.832. Thus, the Boones have no cognizable claim based on this statute.

No. 48502-8-II

The Boones fail to demonstrate that the Department owed any actionable duty to them. And even assuming that the Boones had established some duty owed to her and her children, they fail to demonstrate any genuine issues of material fact as to causation. Accordingly, summary judgment was proper. We affirm the superior court's order granting summary judgment and dismissing the Boones' claims.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

WORSWICK, P.J.

JOHANSON, J.

22